HUGHES, J.
12This is an application for supervisory review, requesting this court to overturn a district court’s denial of the defendant/relator’s exception of prematurity, based on a contractual arbitration agreement in a suit in which the plaintiff/respondent had alleged fraudulent inducement in the contract between the parties. For the reasons that follow, we grant the defendant/relator’s application for supervisory review, reverse the district court ruling, and order these proceedings stayed pending arbitration.
FACTS AND PROCEDURAL HISTORY
Jasper Contractors, Inc. (Jasper), the plaintiff/respondent, is a multi-state roofing contractor, having its principal place of business in Baton Rouge, Louisiana. In October 2008 Jasper signed a contract with E-Claim.com, LLC (E-Claim), the defendant/relator, a Belle Chasse, Louisiana company. The contract stated that E-Claim would provide software and a “server hosted environment”[1] to maintain certain business records belonging to Jasper, which included plans, specifications, proposals, and insurance information for clients. Jasper’s goals in entering into the contract with E-Claim included achieving a “paperless” record-keeping system, having “virtual” access to its records “24/7/365,” and dealing with a local/Louisiana-based service provider. In July of 2009 a significant number of Jasper’s electronic files were lost or deleted from E-Claim’s computer servers, allegedly affecting over 900 of Jasper’s clients and negatively impacting its business. Thereafter, E-Claim disclosed to Jasper that it had outsourced webhosting of Jasper’s files to Edgewebhosting, Inc., a company located in Baltimore, Maryland.
|sOn June 17, 2010 Jasper filed suit in the 19th Judicial District Court against E-Claim and Edgewebhosting, Inc., for damages sustained and sought a declaratory judgment that its contract with E-Claim was null and void for a vice of consent arising from fraud on the part of E-Claim (based on fraudulent representations and/or misrepresentations by E-Claim, which included, among others, that Jasper’s records would be stored on Louisiana-located equipment, rather than out-of-state, and that all electronically-stored data would be regularly “backed-up” and protected by “banking level security”). On August 19, 2010 E-Claim filed an exception of prematurity, contending that Jas *126 per’s petition was premature, because its claim was subject to mandatory contractual arbitration.
Following a November 8, 2010 hearing, the district court overruled the exception of prematurity. The district court’s March 31, 2011 written reasons stated: “The plaintiffs allegations of fraud in the instant suit are sufficient to require that the district court first determine the validity of the contract and based on that ruling, then determine whether the matter shall proceed to arbitration.” A judgment denying E-Claim’s exception of prematurity was signed on May 2, 2011.[2]
On May 31, 2011 E-Claim filed a writ application with this court, assigning one error: “The trial court erred when it refused to enforce the mandatory arbitration provisions of the contract between the parties.” This court denied the writ application. See Jasper Contractors, Inc. v. E-Claim.com, LLC, 2011-0978 (La.App. 1 Cir. 8/29/11) (unpublished). RHowever, the supreme court granted E-Claim’s writ application and remanded the matter to this court “for briefing, argument, and full opinion.” See Jasper Contractors, Inc. v. E-Claim.com, LLC, 2011-2126 (La.11/4/11), 75 So.3d 930, 931.
On remand to this court, E-Claim contends the district court erred when it determined that it should rule on Jasper’s allegations as to the validity of the contract between the parties, rather than have the issue decided by an arbitrator.
LAW AND ANALYSIS
In the contract signed by these parties, the specified applicable law and the agreement to arbitrate is contained in Article 10, Section 10.8, which states in pertinent part:
10.8 Governing Law/Choice of Forum. This Agreement shall be governed by and construed in accordance with the laws of the State of Louisiana applicable to contracts made, executed and performed therein and without reference to any conflicts of law codes, statutes, jurisprudence or principles. Any claim, dispute, or controversy, directly or indirectly, arising out of, relating to, or in connection with this Agreement, or the performance, enforcement, breach, termination, expiration, dissolution, rescission, cancelation, validity or interpretation of this Agreement (including, without limitation, interpretation and resolution of the scope of these arbitration provisions) shall be settled by binding, nonappealable, arbitration in accordance with the Commercial Rules of the American Arbitration Association and, to the extent not inconsistent therewith, the Federal Arbitration Act [9 USC§§ letseq.]....
A plain reading of this section reveals that the parties intended to designate Louisiana law for construing and governing the making, execution, and performance of the contract, without resort to or the application of “conflicts” law. The parties further specified that “binding, *127 nonappealable, arbitration” would be used to settle any “claim, dispute, or controversy” arising out of the contract, as well as those related to the contract’s enforcement, dissolution, cancelation, and/or validity, et cetera. | ^Arbitration was required, by Section 10.8 of the contract, to be in accordance with the American Arbitration Association’s Commercial Rules (AAA Rules) and, “to the extent not inconsistent therewith,” the Federal Arbitration Act (FAA), 9 U.S.C. § 1, et seq. Thus, although Louisiana law was chosen to apply to the contract generally, the AAA Rules and, to the extent not inconsistent, the FAA were chosen to apply to the arbitration agreement contained in the contract.
While Jasper has asserted a vice of consent, i.e. fraud, as to the contract as a whole, it also contends, with respect to the arbitration agreement only, that the arbitration agreement is adhesionary, because it limits any recovery for its damages to either a “Repair Remedy” or a refund of the $7,500 “Initial License And Setup Fee” originally paid by Jasper to E-Claim. In contrast, no similar contractual limitation is placed on E-Claim’s recovery of sums alleged to be due by Jasper.[3]
While Section 10.8 of the contract between the parties, containing the arbitration agreement, does not explicitly address damages, it states as follows:
1 fi[T]he arbitrators shall have the power of, and authority to exercise, amiable compositeur, ex aequo et bono[4] and “natural justice and equity;” and, provided further, that the arbitrators shall have the authority to require specific performance or impose other equitable relief hereunder, as well as imposing money damages and awards of attorneys’ fees to the prevailing party.
Also pertinent are the following provisions of the contract relating to damages, which provide, in pertinent part:
6.2 Exclusive Remedy. As the sole and exclusive remedy of Customer for any warranty claim under Section 6.1(ii) for which E-Claim is responsible, E-Claim shall provide the error-correction services set forth in Section 7.2 (the “Repair Remedy”); provided, that E-Claim reserves the right at any time to elect not to provide, or to abort, the Repair Remedy and, in conjunction therewith, to terminate this Agreement and refund the Initial License and Setup Fee; and, by such termination and payment, Customer shall have no other right, remedy, recourse or claim whatsoever (for damages or otherwise) against E-Claim....
[[Image here]]
6.4 LIMITATION OF LIABILITY. ... THE CUMULATIVE LIABILITY *128 OF E-CLAIM FOR ALL CLAIMS WHATSOEVER RELATED TO THE CMS APPLICATION, THE SERVER HOSTED ENVIRONMENT OR THIS AGREEMENT, INCLUDING ANY CAUSE OF ACTION SOUNDING IN, OR IN THE NATURE OF, CONTRACT, TORT, QUASI-CONTRACT, STATUTORY OR STRICT LIABILITY, SHALL NOT EXCEED THE LIABILITY CAP. THE TERM “LIABILITY CAP” MEANS THE AMOUNT OF THE INITIAL LICENSE AND SETUP FEE ... [excluding obligations under Section 8.1 relative to copyright, patent, trade secret, trademark or any other third-party proprietary right].
6.5 DISCLAIMER OF LIABILITY FOR CONSEQUENTIAL AND SPECIAL DAMAGES. IN NO EVENT SHALL E-CLAIM BE LIABLE FOR ANY CONSEQUENTIAL AND SPECIAL DAMAGES WHETHER OR NOT FORESEEABLE AND REGARDLESS OF WHETHER OR NOT E-CLAIM HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH CONSEQUENTIAL AND ^SPECIAL DAMAGES. THE TERM “CONSEQUENTIAL AND SPECIAL DAMAGES” MEANS, IN ADDITION TO ITS GENERALLY ACCEPTED MEANING, THE FOLLOWING: LOSS OF PROFITS, REVENUE, PATRONAGE OR BUSINESS; DELAY DAMAGES; DAMAGE TO REPUTATION; LOSS OF GOODWILL; LOSS OR CORRUPTION TO DATA; AND ANY INCIDENTAL, INDIRECT, SPECIAL, EXEMPLARY, OR CONSEQUENTIAL DAMAGES.
The issue for this court to decide is whether Jasper’s allegations of fraud as to the inducement of the contract, as a whole, and/or whether the allegations of adhesion as to the arbitration clause itself, can be decided by the 19th Judicial District Court or whether these issues must be decided in arbitration.
On this issue, the FAA is applicable, to the extent not inconsistent with the AAA Rules (as stated in the contract in this case), and supplies the, following general rules, which provide in pertinent part:[5]
§ 2. Validity, irrevocability, and enforcement of agreements to arbitrate A written provision in ... a contract ... to settle by arbitration a controversy thereafter arising out of such contract ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.
§ 3. Stay of proceedings where issue therein referable to arbitration If any suit or proceeding be brought in any of the courts ... upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.
|s§ 4. Failure to arbitrate under agreement; petition to United States court having jurisdiction for order to compel arbitration; notice and service thereof; hearing and determination A party aggrieved by the alleged failure, neglect, or refusal of another to ar *129 bitrate under a written agreement for arbitration may petition any ... district court which, save for such agreement, would have jurisdiction ... in a civil action ... for an order directing that such arbitration proceed.... The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. ... If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed sum-marilg to the trial thereof....
(Emphasis added.)
Important to this discussion is the directive in 9 U.S.C. § 4, in particular, which requires the court to “proceed summarily to the trial” of an issue raised by the parties as to the “making of the arbitration agreement.” The United States Supreme Court, citing Prima Paint Corporation v. Flood & Conklin Mfg. Co., 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), has interpreted the FAA to mean that if a party to a contract requiring arbitration raises a challenge to the arbitration clause itself, the district court must adjudicate it, but if the challenge is to the contract as a whole (such as a claim of fraud in the inducement of the contract), the statutory language does not permit the district court to consider the issue, rather the arbitrator must decide the issue.[6] See Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 444-45, 126 S.Ct. 1204, 1208, 163 L.Ed.2d l038 (2006).[7] The Buckeye Court further stated that as a matter of *131 substantive federal arbitration law, an arbitration provision is severable from 11ftthe remainder of the contract (noting that the question of “severability”[8] is not one of *132 state law).[9] Id., 546 U.S. at 445, 126 S.Ct. at 1208-9. The Supreme Court rejected the contention that the only arbitration agreements to which the FAA applies are those involving a valid contract. In other Inwords, the Supreme Court has rejected the argument that an agreement, which may be void ab initio under state law, is thus not a “contract,” such that 9 U.S.C. § 2’s requirement “to settle by arbitration a controversy ... arising out of such contract” would not apply. The Supreme Court stated in Buckeye that such an argument echoes Justice Black’s dissent in Pri-ma Paint, wherein he stated: “Sections 2 and 3 of the Act assume the existence of a valid contract. They merely provide for enforcement where such a valid contract exists.” In rejecting this argument, the Buckeye Court stated:
We do not read “contract” so narrowly. The word appears four times in § 2. Its last appearance is in the final clause, which allows a challenge to an arbitration provision “upon such grounds as exist at law or in equity for the revocation of any contract.” ... There can be no doubt that “contract” as used this last time must include contracts that later prove to be void. Otherwise, the grounds for revocation would be limited to those that rendered a contract voidable — which would mean (implausibly) that an arbitration agreement could be challenged as voidable but not as void. Because the sentence’s final use of “contract” so obviously includes putative contracts, we will not read the same word earlier in the same sentence to have a more narrow meaning.
See Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. at 447-48, 126 S.Ct. at 1210. Thus, the Supreme Court reaffirmed that “regardless of whether the challenge is brought in federal or state court, a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator[;]” conversely, when the challenge is directed to the arbitration clause, the district court generally has the authority, under 9 U.S.C. § 4, to decide the issue.[10] See Id., 546 *133 U.S. at 449,112126 S.Ct. at 1210. See also International River Center v. Johns-Man-ville Sales Corporation, 2002-3060, pp. 3-4 (La.12/3/03), 861 So.2d 139, 141-42 (holding that LSA-R.S. 9:4203 (the state counterpart to 9 U.S.C. § 4) allows a district court to ascertain only two basic facts before ordering arbitration: (1) whether there is a dispute as to the making of the agreement for arbitration, and (2) whether a party has failed to comply with the arbitration agreement; if the trial court determines that those two facts are not at issue, the court shall issue an order directing the parties to proceed to arbitration).
Nevertheless, the contract in the instant case states that the laws to be applied are “the Commercial Rules of the American Arbitration Association and, to the extent not inconsistent therewith, the Federal Arbitration Act,” and therefore, a deviation from the result that would be reached under an application of the FAA, with respect to the arbitrability issue, is produced by application of the AAA Rules over the FAA rules. AAA Rule R-7[11] provides:
R-7. Jurisdiction
(a) The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.
(b) The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract. A decision by the arbitrator that the contract is null and void shall not for - that reason alone render invalid the arbitration clause.
(c)A party must object to the jurisdiction of the arbitrator or to the arbitrability of a claim or counterclaim no later than the filing of the answering statement to the claim or counterclaim 113that gives rise to the objection. The arbitrator may rule on such objections as a preliminary matter or as part of the final award.
(Emphasis added.)
Although general jurisprudential law, based on the FAA, allows a district court to decide a challenge directed only to a contractual arbitration clause, when, as here, the parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties’ intent to delegate such issues to an arbitrator. See T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc., 592 F.3d 329, 344-45 (2nd Cir.2010); Contec Corporation v. Remote Solution, Co., Ltd., 398 F.3d 205, 208 (2nd Cir.2005); Shaw Group Inc. v. Triplefine International Corporation, 322 F.3d 115, 122-23 (2nd Cir.2003); PaineWebber Inc. v. By *134 byk, 81 F.3d 1193, 1202 (2nd Cir.1996). Likewise, in this ease, the parties’ contract expressly gives the arbitrator the power to decide challenges to the validity of the arbitration clause, via the incorporated AAA. Rules (which were effectively given supremacy, in Section 10.8 of the contract, over the FAA), rather than allowing the district court to decide the issue, as would otherwise be the case.[12]
Jurisprudence cited by Jasper to the contrary is not persuasive. In George Engine Co., Inc. v. Southern Shipbuilding Corporation, 350 So.2d 881 (La.1977), the application of Louisiana arbitration law was at issue, whereas in the instant case, the parties contractually agreed that the current AAA Commercial Arbitration Rules and the FAA would be applicable.[13] Furthermore, the Louisiana Supreme Court subsequently held in Aguillard v. Auction Management Corp., 2004-2804, p. 8 (La.6/29/05), 908 So.2d 1, 8, that the United States Supreme Court has made it clear that whether a claim is brought in state or federal court, and whether a claim arises out of state or federal law, courts must enforce arbitration agreements in contracts covered by the FAA, notwithstanding any state statutory or jurisprudential rules to the contrary, stating:
*135 [A] presumption of arbitrability does exist. Due to the strong and substantial similarities between our state arbitration provisions and the federal arbitration law as seen through a comparison of La.Rev.Stat. §§ 9:4201 and 9:4202 and 9 U.S.C. §§ 2 and 3, the federal jurisprudence provides guidance in the interpretation of our provisions. We, therefore, adopt the United States Supreme Court’s interpretation of the federal arbitration law.
Accordingly, even when the scope of an arbitration clause is fairly debatable or reasonably in doubt, the court should decide the question of construction in favor of arbitration. The weight of this presumption is heavy and arbitration should not be denied unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation that could cover the dispute at issue. Therefore, even if some legitimate doubt could be hypothesized, this [c]ourt, in conjunction with the Supreme Court, requires resolution of the doubt in favor of arbitration.
| rJd., 2004-2804 at pp. 24-25, 908 So.2d at 18. See also FIA Card Services, N.A. v. Weaver, 2010-1372, p. 4 (La.3/15/11), 62 So.3d 709, 712 (holding that to the extent the Louisiana arbitration law conflicts with the FAA any inconsistency must be resolved in favor of the federal act as federal law preempts contrary state law). Consequently, since, in the instant case, the contract, by its terms, requires application of federal law, the federal jurisprudence, cited hereinabove, governs over state jurisprudence and requires arbitration of both the challenge to the contract as a whole and the challenge to the arbitration clause.[14]
Accordingly, we must conclude that the district court erred in overruling E-Claim’s exception of prematurity.
CONCLUSION
For the reasons stated herein, we grant the application of E-Claim.com, LLC for supervisory review; reverse the district court judgment overruling the dilatory exception pleading the objection of prematurity asserted by E-Claim.com, LLC; render judgment in favor of E-Claim.com, LLC, sustaining the exception of prematurity; and order the district court proceedings stayed pending submission of the matter to arbitration.[15] All costs of this writ application are assessed to Jasper Contractors, Inc.
WRIT GRANTED; JUDGMENT REVERSED; PROCEEDINGS STAYED PENDING ARBITRATION.

. E-Claim’s software and Internet data hosting service was called "Click Claim, Claims Management Solutions.”

. The matter was heard before the Honorable Hillary Crain, Pro Tempore, on November 8, 2010. He issued written reasons on March 31, 2011. On May 2, 2011 Judge Kay Bates signed a judgment in accordance with Judge Crain's written reasons. Neither party is contesting the validity of the judgment, under review here, on this basis. Further, Judge Crain's written reasons constitute a ruling on the exception. See Uniform Rules of Louisiana Courts of Appeal, Rule 4-3, 2006 Revision Comment, stating: “The 'ruling at issue’ refers to the interlocutory judgment, order, or ruling of the trial court.” See also Domino v. Striplen, 366 So.2d 1035, 1036 (La.App. 1 Cir.1978), writ denied, 369 So.2d 457 (La.1979), stating: "There is no requirement that an interlocutory judgment be in writing or that it be signed by the trial court....”

. Section 9.5 of the contract, entitled "Accrued Claims,” states:
No termination, expiration or otherwise end of this Agreement shall be deemed to release [Jasper] from indebtedness to E-Claim for any fees, charges accrued or incurred up to or after, the time of such termination, expiration or otherwise end of this Agreement or to release [Jasper] from claims for damages or otherwise which E-Claim accrued or suffered prior to or after such termination, expiration or otherwise end of this Agreement. Nothing in the preceding sentence shall be deemed to limit or waive [Jasper]'s right to contest, in good faith, any fee, charge or claim by E-Claim.

. The contractual provisions that the arbitral tribunal shall decide according to what is “amiable compositeur ” means “according to equity and good conscience,” and “ex aequo et bono ” means what is “just and good." Certain Underwriters at Lloyd’s London Who Participated in Syndicates 47, 219, 227, 376, 490, 506, 529, 590, 672, 727, 807, 923, 947, 991, 994, 1003, 1027, 2003, 2027, 2227, 2376, 2490, 2506, 2591, 2923 and 2947 v. BCS Insurance Company, 239 F.Supp.2d 812, 817 (N.D.Ill.2003).

. Although not applicable to the instant case, we note that LSA-R.S. 9:4201, 9:4202, and 9:4203 of the “Louisiana Binding Arbitration Law” are nearly identical, in all pertinent respects, to 9 U.S.C. § 2, 9 U.S.C. § 3, and 9 U.S.C. § 4, respectively.

. The U.S. First Circuit has stated this concept as follows: The teaching of Prima Paint is that a federal court must not remove from the arbitrators, consideration of a substantive challenge to a contract, unless there has been an independent challenge to the making of the arbitration clause itself. The basis of the underlying challenge to the contract does not alter the severability principle. Thus, a party cannot avoid arbitration, through rescission of an entire agreement, when it has made no independent challenge to the arbitration clause. Unionmutual Stock Life Insurance Company of America v. Beneficial Life Insurance Company, 774 F.2d 524, 529 (1st Cir. 1985).

. Regarding 9 U.S.C. § 2’s mandate that a contract containing an arbitration agreement be valid, irrevocable, and enforceable, "save upon such grounds as exist at law or in equity for the revocation of any contract,” the Supreme Court explained that such challenges can be divided into two types. One type challenges specifically the validity of the agreement to arbitrate. The other challenges the contract as a whole, either on a ground that directly affects the entire agreement (e.g., the agreement was fraudulently induced), or on the ground that the illegality of one of the contract’s provisions renders the whole contract invalid. Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. at 444, 126 S.Ct. at 1208. The Buckeye Court further noted that the issue of the contract’s validity is different from the issue of whether any agreement between the alleged obligor and obligee was ever concluded, stating that its opinion addressed only the former and did not speak to the latter. Buckeye, 546 U.S. at 444 n. 1, 126 S.Ct. at 1208 n. 1. The former issue includes not only whether any agreement was ever confected, but also, though arbitration clauses are severable from a larger contract, the question of whether an underlying contract contains a valid arbitration clause, because arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute that he has not agreed so to submit. See Sandvik AB v. Advent International Corp., 220 F.3d 99, 105 (3rd Cir.2000). See also Mitsubishi Motors Corporation v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 625-26, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985); Spahr v. Secco, 330 F.3d 1266, 1269 (10th Cir.2003). The U.S. 9th Circuit, in Three Valleys Municipal Water District v. E.F. Hutton & Company, Inc., further explained the distinction made in Buckeye as follows:
*130 We read Prima Paint as limited to challenges seeking to avoid or rescind a contract — not to challenges going to the very existence of a contract that a party claims never to have agreed to. A contrary rule would lead to untenable results. Party A could forge party B's name to a contract and compel party B to arbitrate the question of the genuineness of its signature. Similarly, any citizen of Los Angeles could sign a contract on behalf of the city and Los Angeles would be required to submit to an arbitrator the question whether it was bound to the contract, even if its charter prevented it from engaging in any arbitration. Under this view, Pri-ma Paint applies to "voidable” contracts— those where one party was an infant, or where the contract was induced by fraud, mistake, or duress, or where breach of a warranty or other promise justifies the aggrieved party in putting an end to the contract. If the dispute is within the scope of an arbitration agreement, an arbitrator may properly decide whether a contract is "voidable,” because the parties have agreed to arbitrate the dispute. But, because an arbitrator's jurisdiction is rooted in the agreement of the parties, arbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration, a party who contests the making of an arbitration agreement cannot be compelled to arbitrate the threshold issue of the existence of the agreement to arbitrate. Only a court can make that decision. Three Valleys Municipal Water District v. E.F. Hutton & Company, Inc., 925 F.2d 1136, 1140-41 (9th Cir.1991). Clearly, the trigger of the court's power to compel arbitration is the existence of a presumptively valid arbitration agreement, contained within a contract signed by the parties. Chastain v. Robinson-Humphrey Company, 957 F.2d 851, 855 (11th Cir.1992). Thus, the first task of a court, asked to compel arbitration of a dispute, is to determine whether the parties agreed to arbitrate that dispute. Chastain, 957 F.2d at 854 (wherein the signature of one party to a securities trading account was alleged to have been forged, and it was held that it is for courts to decide whether the alleged obligor ever signed the contract). Under normal circumstances, the Chastain court explained, an arbitration provision within a contract, which the contractual parties have admitted to signing, is sufficient to require the district court to send any controversies to arbitration. Under such circumstances, the parties have at least presumptively agreed to arbitrate any disputes, including those disputes about the validity of the contract in general. Because the making of the arbitration agreement itself is rarely in issue when the parties have signed a contract containing an arbitration provision, the district court usually must compel arbitration immediately after one of the contractual parties so requests. The calculus changes when it is undisputed that the party seeking to avoid arbitration has not signed any contract requiring arbitration. In such a case, that party is challenging the very existence of any agreement, as well as the existence of an agreement to arbitrate. Under these circumstances, there is no presumptively valid general contract that would trigger the district court’s duty to compel arbitration pursuant to the FAA. If a party has not signed an agreement containing arbitration language, such a party may not have agreed to submit grievances to arbitration at all. Therefore, before sending any such grievances to arbitration, the district court itself must first decide whether or not the non-signing party can nonetheless be bound by the contractual language, on some other basis. See Id. In addition to a claim that a contract, which includes mandated arbitration, was ever signed by a party, other claims, evoking a question as to whether a party has agreed to arbitration, thus presenting a question for the courts, not arbitrators, have included: whether the signor lacked authority to commit the alleged principal {see Sandvik, supra, and Three Valleys, supra); whether an agent had authority to bind the principal and whether the signor had the mental capacity to assent (see Sphere Drake Insurance Limited v. All American Insurance Company, 256 F.3d 587 (7th Cir.2001), and Spahr, supra); whether a requirement of arbitration in a written, but unsigned, confirmation notice, transmitted subsequent to an oral sales agreement, became part of the verbal agreement or was an unenforceable material alteration (see Supak & Sons Manufacturing Company, Inc. v. Pervel Industries, Inc., 593 F.2d 135 (4th Cir.1979) (which held that the seller's confirmation form, which was not signed by the buyer, providing that any controversy arising out of oral contract be submitted to binding arbitration, was a per se material alteration of the contract and did not become part of it; and further holding that, by its terms, 9 U.S.C. § 2 does not apply until the arbitration clause in question is determined to be part of the contract)); *131 whether employer-distributed rules requiring arbitration of employment disputes, which stated acceptance of or continued employment by an employee amounted to a consent to arbitrate, constituted a valid agreement to arbitrate (see Marino v. Dillard's, Inc., 413 F.3d 530, 531 (5th Cir.2005) (citing Louisiana contract law that when an agreement to arbitrate lacks a signature, the actions and the conduct of the party or parties, who did not sign, may show the effect or validity of the agreement; the court concluded there had been a valid offer and acceptance, thus arbitration was mandated)); and when a unilateral contractual amendment, incorporating an agreement to arbitrate, is mailed to a credit card customer, who has not signed the amendment {see FIA Card Services, N.A. v. Weaver, 2010-1372 (La.3/15/11), 62 So.3d 709 (noting that 9 U.S.C. § 9’s confirmation of arbitration award procedure presupposes an agreement to arbitrate as a necessary condition for confirmation of an arbitral award, so that before a court may enter judgment on a petition to confirm, it must answer the fundamental question of whether there was an arbitration agreement between the parties; because there was no signed agreement to arbitrate, the plaintiff/credit card company was required to prove, but failed to show, that notice of the change in terms of the credit card agreement had been sent to the defendant/customer or that, after sending the notice, the customer assented to the new terms by his continued use of the card)). See also John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 546-47, 84 S.Ct. 909, 912-13, 11 L.Ed.2d 898 (1964) (which held that a court should decide whether an arbitration agreement survived a corporate merger and bound the successor corporation); AT & T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (holding that a dispute, over whether an arbitration clause in an admittedly binding contract applied to a particular type of controversy (i.e., grievances concerning layoffs), is for the court); and Atkinson v. Sinclair Refining Company, 370 U.S. 238, 241-43, 82 S.Ct. 1318, 1320-21, 8 L.Ed.2d 462 (1962) (holding that the court should decide whether a clause providing for arbitration of various union "grievances” could be construed to bind the defendant/employer to arbitrate its claim for damages against the union for breach of a no-strike agreement). But see International River Center v. Johns-Manville Sales Corporation, 2002-3060, p. 4 (La. 12/3/03), 861 So.2d 139, 142 (holding that neither LSA-R.S. 9:4202 nor LSA-R.S. 9:4203 (the state counterparts to 9 U.S.C. §§ 3 and 4) allows the district court to determine the issue of whether arbitration has been waived, citing Bartley, Inc. v. Jefferson Parish School Board, 302 So.2d 280 (La.1974) (which held that LSA-R.S. 9:4203 requires a court to order arbitration once it has found that there is an agreement to arbitrate and a failure to comply with that agreement)). Thus, we can conclude that a dispute as to the "the making” of the agreement for arbitration is reserved for decision by the court, as stated in 9 U.S.C. § 4 and LSA-R.S. 9:4203. It has long been recognized that the FAA simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms. Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University, 489 U.S. 468, 478, 109 S.Ct. 1248, 1255, 103 L.Ed.2d 488 (1989). The purpose of the FAA is to make arbitration agreements as enforceable as other contracts, but not more so. Supak & Sons Manufacturing Company, Inc. v. Pervel Industries, Inc., 593 F.2d 135, 137 (4th Cir.1979) (quoting Prima Paint Corporation v. Flood & Conklin Mfg. Co., 388 U.S. at 404 n. 12, 87 S.Ct. at 1806 n. 12).

. An arbitration clause will generally be "sev-erable” from the contract in which it is embedded, in the sense that it may be valid even if the rest of the contract is invalid. If the agreement of one party, to arbitrate disputes, is fully supported by the other party's agreement to do likewise, there is no need to look elsewhere in the contract for consideration for the agreement to arbitrate; so objections to other parts of the contract, based on fraud, unconscionability, mistake, et cetera, need not spill over to the arbitration clause. See Matterhorn, Inc. v. NCR Corporation, 763 F.2d 866, 868-69 (7th Cir.1985). Stated another way, the doctrine of severability presumes an underlying, existent, agreement to arbitrate. Such an agreement exists even if one of the parties seeks to rescind the larger contract on some basis (e.g., as in alleging fraud in the *132 inducement). However, it is clear that a sev-erable arbitration clause does not exist, if no contract ever existed. See Sandvik, 220 F.3d at 106.

. We further note that Section 9.6 of the parties' contract provides: "Notwithstanding the termination, cancelation, rescission, dissolution, ... voiding, expiration or otherwise end of this Agreement, the following provisions survive: ... Article 10...." Also, Section 10.11 states:
In the event that all or any part of the terms, conditions or provisions contained in this Agreement are determined to be invalid, unlawful or unenforceable to any extent by any arbitrator or any court or tribunal of competent jurisdiction, such term, condition or provision shall be severed from the remaining terms, conditions and provisions which shall continue to be valid and enforceable to the fullest extent permitted by law. Further, to the extent that said arbitrator, court or tribunal has the power to conform and reform said invalid, unlawful or unenforceable term, condition or provision, said arbitrator, court and tribunal is authorized and requested by the parties (said request being hereby a covenant between the parties) to conform and reform said invalid, unlawful or unenforceable term, condition or provision to a form, and in substance, as is as close to the severed term, condition or provision as possible yet valid and enforceable.

. A different result was reached by the Louisiana Supreme Court, with respect to the application of the Louisiana arbitration law (LSA-R.S. 9:4201 et seq.) in George Engine Co., Inc. v. Southern Shipbuilding Corporation, 350 So.2d 881 (La.1977). At issue in the George Engine case was a contention that a contract was void ab initio, because of an error on the part of the buyer in the principal cause of the agreement that resulted from a material misrepresentation by the seller. The contract between the parties contained an arbitration agreement, which the seller sought to enforce. In ruling on whether the *133 district court suit filed by the buyer, seeking rescission of the contract, should be stayed pending arbitration, the Louisiana Supreme Court, declining to follow the Prima Paint decision, held that LSA-R.S. 9:4201 (which states that a provision in a written contract "to settle by arbitration a controversy thereafter arising out of the contract ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract” (which we note is nearly identical in all pertinent terms to 9 U.S.C. § 2, quoted hereinabove)) is enforceable only as to a valid contract and that such a challenge to the validity of the contract is triable before the district court, rather than the arbitrator. See George Engine, 350 So.2d at 884-86.

. The AAA Commercial Arbitration Rules are available at http://www.adr.org/sp.asp7id— 22440. See Dealer Computer Services, Inc. v. Old Colony Motors, Inc., 588 F.3d 884, 887 (5th Cir.2009).

. Although we do not find it necessary to resolve the issue in order to dispose of this writ application, and we find no jurisprudence addressing the point, we note that where the AAA Rules govern and authorize an arbitrator to determine arbitrability, rather than the court, there is an argument to be made as to whether such an agreement, insofar as it includes disputes relative to the “making” of the arbitration agreement (i.e., when the attack on the arbitration agreement itself is that it is void, rather than voidable), may be violative of public policy. This issue is not present in the instant case because Jasper’s assertion is that the arbitration agreement is voidable, as adhesionary. However, we note that if an allegation had been made that the arbitration agreement was allegedly void, then the policy considerations expressed in the jurisprudence discussed hereinabove, stating that it is the province of the district court to decide all issues relative to the "making” of the arbitration agreement, may supersede any provisions to the contrary in the parties' contract. As stated in Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83-84, 123 S.Ct. 588, 592, 154 L.Ed.2d 491 (2002), linguistically speaking, one might call any potentially dispositive gateway question a "question of arbitrability,” for its answer will determine whether the underlying controversy will proceed to arbitration on the merits; the phrase "question of arbitrability” has generally been interpreted as meaning the kind of narrow circumstance where contracting parties were not likely to have thought that they had agreed that an arbitrator would decide the case. A gateway dispute about whether the parties are bound by a given arbitration clause raises a "question of arbitrability” for a court to decide. Id.

. We note that the supreme court in George Engine stated:
[T]he decision in Prima Paint Corp. v. Flood & Conklin, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967).... interprets the Federal Arbitration Act (9 U.S.C. §§ 1-14) and holds that the issue of fraud in the inducement of a contract generally must be submitted to arbitration when the contract contains an arbitration clause. Although ordinarily this opinion by the United States Supreme Court would bear great weight upon our decision, in the instant case reason and law in this [cjourt's view weigh more heavily in favor of the dissenting opinion of Mr. Justice Black joined in by Mr. Justice Douglas-and Mr. Justice Stewart as the reasons assigned herein will demonstrate. Further justification for adopting the dissenting view is found in the circumstance that a state statute is being interpreted and no federal question or federal constitutional principle is involved which compels this [cjourt to follow the views expressed by ‘the United States Supreme Court. Under these circumstances Louisiana’s highest court is free to interpret this State’s law in accordance with its understanding of the legislative intent and its appreciation of what is more logical, reasonable and just.
George Engine, 350 So.2d at 886.

. As noted hereinabove, exceptions to the contractually-mandated referral of the arbi-trability issue include instances where there is a question as to the existence of any contract between the parties, such as when it is alleged: that there is no signed contract, that there is no arbitration agreement in a signed contract, that a party’s signature on a contract has been forged, that the party who signed a contract on behalf of someone else had no authority to do so, or that a party has been forced to sign an agreement against his will.

. When a valid arbitration agreement exists, pending an arbitration award a court is expressly authorized to stay proceedings and/or compel the parties to proceed to arbitration upon the application of one of the parties. Bernard v. Hildebrand, 2008-0268, p. 6 (La.App. 1 Cir. 8/6/08), 993 So.2d 678, 683. See also 9 U.S.C. § 3.