CRAIN, J.
This suit arises from the sinkhole that developed in Assumption Parish in August 2012. Texas Brine Company, LLC, appeals a November 27, 2016 judgment denying its request for a preliminary injunction to enjoin arbitration proceedings. Finding the courts lack authority to decide the issues urged as to the injunction, we affirm.
FACTS AND PROCEDURAL HISTORY
After being named a defendant in this suit, Texas Brine filed incidental demands asserting tort and contract claims against various parties, including Occidental Chemical Corporation ("Oxy") and Vulcan Materials Company. Texas Brine alleged that in 1975, Oxy, as owner of the land over the Napoleonville Salt Dome, leased to Texas Brine the right to produce salt from the land. In 1976, Texas Brine transferred its interest in the salt lease to Vulcan,[1] but remained operator of the brine production wells and related facilities pursuant to an Operating and Supply Agreement dated October 29, 1975 ("Operating Agreement"). The Operating Agreement was amended and restated in its entirety by Texas Brine and Vulcan on January 1, 2000 ("Amended Operating Agreement"). Oxy then acquired Vulcan's assets and assumed *635 its obligations under the salt lease and Amended Operating Agreement.
The Amended Operating Agreement contained an arbitration clause in Section 12.10. Pursuant thereto, Texas Brine and Oxy have been engaged in arbitration proceedings, while simultaneously litigating claims in court. According to a scheduling order issued by the trial court, contract claims are being arbitrated, while tort claims are proceeding in court.
Texas Brine now claims Vulcan fraudulently induced it to enter the Amended Operating Agreement and the arbitration agreement contained therein by withholding critical information. Texas Brine asserts the fraudulent inducement vitiated its consent, making both the Amended Operating Agreement and the arbitration clause in Section 12.10, void ab initio. Arguing no enforceable arbitration clause exists, Texas Brine moved for a preliminary injunction to halt the arbitration proceedings until the court decides its fraudulent inducement claims.[2] Oxy countered that Texas Brine's fraudulent inducement claim could not be resolved in the courts and must be raised in the arbitration proceeding, citing this court's decision in Jasper Contractors, Inc. v. E-Claim.com, LLC, 11-0978 (La. App. 1 Cir. 5/4/12), 94 So.3d 123.
The trial court held the arbitrators, not the court, must decide Texas Brine's challenge to the contract as a whole. However, drawing a distinction recognized by the Supreme Court in Buckeye Check Cashing, Inc. v. Cardegna , 546 U.S. 440, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006), the trial court found any claim directed specifically to the validity of the arbitration clause should be decided by the court. After considering the evidence presented at the hearing, the trial court found Texas Brine failed to prove its consent to the arbitration clause itself was vitiated by fraud. Consequently, the trial court signed a judgment on November 27, 2016, denying Texas Brine's motion for preliminary injunction and refusing to enjoin the arbitration proceedings.
Texas Brine now appeals, arguing the trial court erred in its determination that arbitration rather than court is the proper forum for resolving the question of whether an enforceable agreement to arbitrate exists between the parties.[3] It argues *636 only a Louisiana court can define the requirements for a valid and binding contract under Louisiana law, and the courts must make the threshold determination as to the validity of the underlying contract giving rise to the arbitration proceeding. Texas Brine additionally argues it did, in fact, make a fraudulent inducement claim directed specifically to the arbitration provision, and the trial court erred in finding the evidence insufficient as to that issue.
DISCUSSION
Arbitration is a matter of contract. AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339, 131 S.Ct. 1740, 1745, 179 L.Ed.2d 742 (2011). Therefore, we begin our analysis with the language of the contract. See Buckeye, 546 U.S. at 442-43, 126 S.Ct. at 1207 ; Jasper Contractors, Inc., 94 So.3d at 126-29.
The Amended Operating Agreement, provides in Section 12.10(a):
Any dispute, controversy or claim arising out of or relating to this Agreement or the breach, validity or termination thereof shall be finally settled by arbitration. Any dispute, controversy or claim arising out of or relating to any of the other instruments and agreements pertaining to the Leased Premises or the use or operation thereof (or the breach, validity or termination thereof) may be consolidated in one proceeding with any arbitration relating to this Agreement. The arbitration shall be conducted in accordance with the Commercial Arbitration Rules of the American Arbitration Association [ (AAA) ] in effect at the time of arbitration ("the Rules"), except as modified herein or by mutual agreement of the parties. The arbitration shall be held in New Orleans, Louisiana. The arbitration shall be governed by the U.S. Federal Arbitration Act [ (FAA) ]. [ (Emphasis added.) ]
According to the express terms of the contract, the FAA ( 9 U.S.C. §§ 1 - 16 ) and AAA rules govern resolution of this dispute.
The FAA requires "that courts treat an arbitration clause as severable from the contract in which it appears and enforce it according to its terms unless the party resisting arbitration specifically challenges the enforceability of the arbitration clause itself." Granite Rock Co. v. International Broth. of Teamsters, 561 U.S. 287, 301, 130 S.Ct. 2847, 2858, 177 L.Ed.2d 567 (2010). The Supreme Court has interpreted the FAA to mean that claims of fraud in the inducement of a contract containing an arbitration clause are decided by the arbitrator, not the court. Buckeye, 546 U.S. at 445, 126 S.Ct. at 1208. The Supreme Court further rejected the argument that the FAA only requires enforcement of arbitration clauses in contracts first determined valid under state law. Buckeye, 546 U.S. at 445, 126 S.Ct. at 1208-09. Thus, in accordance with the Supreme Court's interpretation of the FAA, the question of whether the Amended Operating Agreement is void because Texas Brine's consent was vitiated by fraud in the inducement of the contract must be decided by the arbitrator.
Texas Brine argues that its fraudulent inducement claim additionally challenges the arbitration clause itself. Under the FAA, the courts are generally authorized to decide challenges to the enforceability of the arbitration clause itself. See Buckeye, 546 U.S. at 445, 126 S.Ct. at 1208. However, the parties may contractually delegate the authority to decide issues *637 of arbitrability, including the validity of the arbitration clause, to the arbitrator. See First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943, 115 S.Ct. 1920, 1923, 131 L.Ed.2d 985 (1995). That is, if the parties' contract expressly gives the arbitrator the power to decide challenges to the validity of the arbitration clause, the arbitrator, rather than the courts, must decide the clause's validity. See Jasper Contractors, Inc., 94 So.3d at 134 ; see also First Options of Chicago, Inc., 115 S.Ct. at 1923-24 ; Crawford Professional Drugs, Inc. v. CVS Caremark Corp., 748 F.3d 249, 262 (5th Cir. 2014).
Rule R-7 of the AAA Rules provides the arbitrator shall have the power to rule on his or her own jurisdiction, including the validity of the arbitration agreement. A contract's incorporation of the AAA Rules that empower an arbitrator to decide issues of arbitrability serves as clear and unmistakable evidence of the parties' intent to delegate such issues to the arbitrator. Jasper, 94 So.3d at 133. Here, the Amended Operating Agreement explicitly incorporates the AAA rules; therefore, to the extent Texas Brine alleged the arbitration clause itself was induced by fraud, that challenge to the arbitration clause must also be decided by the arbitrator. Consequently, for purposes of this appeal, whether Texas Brine actually made a challenge specific to the arbitration clause is a distinction without a difference.
Texas Brine's arguments that no enforceable arbitration clause exists as a result of fraudulent inducement, whether directed at the contract as a whole or at both the contract and the arbitration clause itself, must be decided through arbitration.[4] Accord LeBlanc v. Texas Brine Co., LLC, 12-2059, 2016 WL 2849506 (E.D. La. 2016) (finding, in related sinkhole proceedings in federal court, that Oxy established "the parties' clear and unmistakable intent to arbitrate the issue of arbitrability" given that Section 12.10 of the Amended Operating Agreement between Texas Brine and Oxy expressly incorporated the Commercial Arbitration Rules of the AAA, including Rule 7(a) governing jurisdiction). Texas Brine's request for a preliminary injunction premised on those issues was properly denied.
CONCLUSION
The November 27, 2016 judgment denying Texas Brine's request for a preliminary injunction enjoining arbitration proceedings is affirmed. Costs of this appeal are assessed to Texas Brine Company, LLC.
AFFIRMED.
McDonald, J. agrees and assigns additional reasons
Holdridge J. concurs with the result and assigns reasons
McDONALD, J., agreeing and assigning additional reasons.
*638 Although I agree with the majority opinion, I write separately to point out that a different result may have been reached if Louisiana arbitration law, LSA-R.S. 9:4201 et seq., were applicable to the Amended Operating Agreement. See George Engine Co., Inc. v. Southern Shipbuilding Corporation, 350 So.2d 881 (La. 1977). Generally, also see Martin Domke, Gabriel Wilner, and Larry E. Edmondson, 1 Domke on Commercial Arbitration, § 11:2 Fraud in the Inducement of Contract; The Federal Rule and § 11:4 Other State Jurisdictions (August 2018 update).
HOLDRIDGE, J., CONCURS, AND ASSIGNS REASONS.
I respectfully concur with the result reached by the majority. However, I write separately since the majority erred in using the incorrect standard in deciding a request for a preliminary injunction by attempting to make a final ruling on the merits of the case and further erred in making a conclusory statement that the trial court lacked the authority to decide the issues urged in Texas Brine's request for a preliminary injunction.
A preliminary injunction is essentially an interlocutory order issued in summary proceedings incidental to the main demand for permanent injunctive relief. Zachary Mitigation Area, LLC v. Tangipahoa Parish Council, 2016-1675 (La. App. 1 Cir. 9/21/17), 231 So.3d 687, 690. A preliminary injunction is an interlocutory procedural device designed to preserve the status quo pending a trial on the merits of the issues of the case. See La. C.C.P. art. 3601 ; Levine v. First Nat. Bank of Commerce, 2006-0394, 2006-0439 (La. 12/15/06), 948 So.2d 1051, 1056 n. 4. Even though the preliminary injunction hearing may touch upon or tentatively decide merit issues, the principal demand can be determined on its merits only after a full trial under ordinary process. Id. This rule is subject to the exception that if the parties have expressly agreed to submit the case for final decision at the hearing on the rule for a preliminary injunction, the ruling on the preliminary injunction may definitively dispose of the merit issues. See Adler v. Williams, 2016-0103 (La. App. 1 Cir. 9/16/16), 203 So.3d 504, 514. The record in this case does not contain a stipulation or agreement of the parties that the issue of the granting of a permanent injunction would be decided at the hearing on the preliminary injunction. In fact, the trial judge in his reasons for judgment stated, "[The] ultimate finding is beyond the scope of this injunction analysis and should be reserved until there is a ruling after a full hearing on the merits."
Therefore, in order to obtain a preliminary injunction as opposed to a permanent injunction, Texas Brine at a hearing must make a sufficient prima facie showing that it is likely to prevail on the merits of its claim of fraudulent inducement and that it will be irreparably harmed unless arbitration is enjoined. See La. C.C.P. art. 3601 ; Farmer's Seafood Co., Inc. v. State ex rel. Dept. of Pub. Safety , 2010-1534 (La. 9/3/10), 44 So.3d 676, 678 (per curiam). At the preliminary injunction hearing, the trial court was not called upon to make a definitive ruling on whether the fraudulent inducement claim must be decided by the arbitrator or the court. The only issue for the court to decide was whether Texas Brine made a prima facie case that the claim of fraudulent inducement should be decided by the trial court and not the arbitrator, and if so, would Texas Brine suffer irreparable injury if the arbitration was allowed to proceed. The burden of proof for a preliminary injunction is different from that of a permanent injunction. While a prima facie showing may be required *639 to obtain a preliminary injunction, a permanent injunction shall only issue if the plaintiff proves its case by a preponderance of the evidence. Therefore, in this case, the final decision on who should decide the fraudulent inducement claim must be decided after a full trial on the merits, not by the trial court at a hearing on the preliminary injunction (see Elysian Fields Church of Christ v. Dillon , 2008-0989 (La. App. 4 Cir. 3/18/09), 7 So.3d 1227, 1232 ), and not by this court on an appeal of a denial of a preliminary injunction.
Lastly, there can be no question that the trial court in this case had the authority to "decide the issues urged as to the injunction." The parties recognized the authority of the trial court to decide the injunction issue when they stipulated to the extension of the temporary restraining order pending the court's ruling on the preliminary injunction. While the trial court has the subject matter jurisdiction to hear this case, the defendants may have delayed the ability of the trial court to proceed by filing either a dilatory exception raising the objection of prematurity or by filing a motion to stay the proceedings.[1] Therefore, I respectfully concur in affirming the trial court's judgment that denied Texas Brine's request for a preliminary injunction enjoining arbitration proceedings.

Whether Texas Brine's transfer of its salt lease to Vulcan constituted a legal assignment is the subject of another appeal pending before this court under docket number 2018CA0075 c/w 0241 c/w 0796.

Oxy previously sought supervisory review of both the denial of its motion to stay trial court proceedings between itself and Texas Brine pending the outcome of the arbitration and the denial of its exception of arbitration as to tort claims. In denying the motion to stay, the trial court limited the scope of the arbitration clause to claims arising under contract, distinguishing those from claims arising under Louisiana Civil Code articles 667 and 2317, or under tort, which it found are not subject to arbitration. This court denied the application for supervisory writ, but two judges dissented stating they would stay the proceedings involving the delictual claims until the arbitration panel decided arbitrability. See Florida Gas Transmission Co., LLC v. Texas Brine Co., LLC , 15-1211 (La. App. 1 Cir. 12/17/15) (unpublished writ action), writ denied, 16-0113 (La. 2/4/16), 186 So.3d 1155.

Although a trial court's judgment on a preliminary injunction constitutes an interlocutory ruling, a party aggrieved by a judgment granting or denying a preliminary injunction is entitled to appeal. La. Code Civ. Pro. art. 3612B; Zachary Mitigation Area, LLC v. Tangipahoa Parish Council, 16-1675 (La. App. 1 Cir. 9/21/17), 231 So.3d 687, 691. This court previously denied Texas Brine's application for supervisory writ of review of the trial court's ruling. Florida Gas Transmission Co., LLC v. Texas Brine Co., LLC, 16-1605, 2017 WL 496373 (La. App. 1 Cir. 2/6/17) (unpublished writ action), writ denied, 17-0428 (La. 4/24/17), 219 So.3d 1098. That ruling merely represents this court's decision not to exercise supervisory jurisdiction and, despite the inclusion of citations supporting the trial court's decision, did not create law of the case. See Maloney Cinque, L.L.C. v. Pacific Ins. Co., Ltd., 10-1164 (La. 5/21/10), 36 So.3d 236 ("[O]nce the court of appeal denied the writ, any additional remarks or findings are not binding."); Davis v. Jazz Casino Co., L.L.C., 03-0276 (La. 6/6/03), 849 So.2d 497, 498 (per curiam ).

Texas Brine argues Louisiana jurisprudence, including the Louisiana Supreme Court's decision in George Engine Co., Inc. v. Southern Shipbuilding Corp., 350 So.2d 881 (La. 1977), dictates a contrary result. However, this court rejected that argument in Jasper , noting George Engine involved application of Louisiana law, not the FAA and AAA rules. Jasper, 94 So.3d at 134. Further, subsequent to George Engine , the Louisiana Supreme Court recognized courts must enforce arbitration agreements covered by the FAA, notwithstanding state statutory or jurisprudential rules to the contrary. See Aguillard v. Auction Management Corp., 04-2804 (La. 6/29/05), 908 So.2d 1, 8 ; see also Astro Technology, Inc. v. D.H. Griffin of Texas, Inc., 06-0325 (La. 5/26/06), 930 So.2d 3 ; Gupta v. Surgical Partners of America, Inc., 06-0507 (La. 5/26/06), 930 So.2d 4. Likewise, Duhon v. Activelaf, LLC, 16-0818 (La. 10/19/16), --- So. 3d ----, 2016 WL 6123820, cert. denied , --- U.S. ----, 137 S.Ct. 2268, 198 L.Ed.2d 700 (2017), is both factually and legally distinguishable from the case sub judice as it involved application of Louisiana arbitration law to an adhesionary arbitration agreement.

If arbitration is the sole remedy and injunctive relief was not available to Texas Brine, the arbitration defense should have been raised by an exception of prematurity, which cannot be raised by the court of appeal on its own motion. See La. C.C.P. art. 926(1) ; Moreno v. Entergy Corp., 2010-2281 (La. 2/18/11), 62 So.3d 704, 705 ; Cook v. AAA Worldwide Travel Agency, 360 So.2d 839, 841 (La. 1978). Even though a contract contains an arbitration clause, the parties can stipulate and agree that the issue will be heard by the trial court. The failure of a party to arbitrate in accordance with the terms of an agreement or the inability of a party to stop arbitration must be raised by a party either through a dilatory exception of prematurity demanding dismissal of the suit or by a motion to stay the proceedings pending arbitration. See La. R.S. 9:4202 ; Swaggart v. Doe, 50,739 (La. App. 2 Cir. 4/5/17), 216 So.3d 1118, 1125, writ denied, 2017-0758 (La. 9/22/17), 227 So.3d 822.