McDonald, j.
12FACTS
Ronald and Angela Courville (the Cour-villes) filed a petition for medical malpractice on November 28, 2011, against Dr. Rathmann and his clinic, Rathmann-Keogh Chiropractic Clinics, L.L.C. Pursuant to the Louisiana Direct Action Statute, La.Rev.Stat. 22:1269 (“LDAS”) et seq., the Courvilles also named Dr. Rathmann’s foreign liability insurer, Allied Professionals Insurance Company, A Risk Retention Group, Inc. (“APIC”), as a defendant. ABIC is an Arizona risk retention group *662 created pursuant to the Liability Risk Retention Act of 1986 (“LRRA”). 15 U.S.C. § 3901 et seq. APIC, however, refused to participate in the proceedings and filed an exception raising the objection of no cause of action and a Motion to Compel Arbitration and Stay Proceedings. APIC’s Motion to Compel Arbitration and Stay Proceedings was premised on an arbitration provision contained in an insurance agreement entered into between Dr. Rathmann and APIC (no other party or entity is mentioned in the agreement, nor is anyone a signatory to the agreement except APIC and Dr. Rathmann). The arbitration clause in question provides, in pertinent part:
“C. Arbitration. All disputes or claims involving the Company shall be resolved by binding arbitration, whether such disputes or claim arises between the parties to this Policy, or between the Company and any person or entity who is not a party to the Policy but is claiming right either under the policy or against the Company.... All procedures, methods, and rights with respect to the right to compel arbitration pursuant to this Article shall be governed by the Federal Arbitration Act. The arbitration shall occur in Orange County, California. The 'laws of the State of California shall apply to any substantive, evidentiary, or discovery issues.... If any party seeks a court order compelling arbitration under this provision, the prevailing party in such motion, petition or other proceeding to compel arbitration shall recover all reasonable legal fees and costs incurred thereby and in any subsequent appeal, and in any action to collect the fees and costs...”
In an order signed February 4, 2013, APIC’s Motion to Compel Arbitration and Stay Proceedings was granted by the trial court, ordering all parties to submit |sto binding arbitration in California pursuant to the terms and conditions of the insurance policy. The trial court pretermitted ruling on the no cause of action exception filed by APIC. In support of its exception of no cause of action, APIC argues that the LRRA preempts the LDAS. The Cour-villes’ contend that the trial court’s narrow holding allows this Court to decide not to rule on the issue. However, to properly discuss and review the Courvilles’ first assignment of error, it is necessary to clarify the relationship between the LRRA, The Federal Arbitration Act, and the McCar-ran-Ferguson Act.
On March 15, 2013, the Courvilles filed a motion for suspensive appeal, which was granted by the trial court, on March 21, 2013. The trial court granted a Motion and Order for Suspensive Appeal. On appeal, the Courvilles assign the following errors:
1. APIC was well aware of La.Rev. Stat. Ann. § 22:1269 (Louisiana Direct Action Statute) and the risk that it would be hailed into a Louisiana court when it issued liability insurance coverage to a Louisiana physician. APIC was also well aware of La.Rev.Stat. Ann § 22:868 that expressly prohibits arbitration provisions in insurance contracts. APIC, furthermore, was well aware that its arbitration provision was governed by the Federal Arbitration Act, an Act which the McCarran Ferguson Act allows for La.Rev.Stat. §§ 22:1269 and 22:868 to “reverse preempt,” thereby voiding APIC’s arbitration provision. The district court erred in ordering that the Courvilles must attend binding arbitration in California.
2. Out of an abundance of caution and to the extent that this Court affirms the district court’s granting of APIC’s Motion to Compel Arbitration and Stay All Proceedings, the Courvilles raise an ad *663 ditional assignment of error. The Courvilles’ claims against Dr. Rath-mann, individually, and Rathmann-Keogh Chiropractic Clinics, L.L.C., individually, are not subject to an arbitration agreement. The district court should not have stayed those claims. The district court erred in staying the entire proceedings as opposed to only the Courvilles’ claims against APIC.
For the following reasons, we affirm a portion of the decision of the trial court, reverse a portion and lift the stay.
^STANDARD OF REVIEW
The determination of whether to compel arbitration is a question of law, and thus, this court conducts a de novo review.[1] Courts use a bifurcated analysis to determine whether it is proper to compel a party to arbitrate.[2] In ruling on a motion to compel arbitration, the court must first determine whether the parties agreed to arbitrate the type of claim that is at issue.[3] Then, upon finding that the parties have agreed to arbitrate, the court must look to see if any federal statute or policy deems the dispute nonarbitrable.[4] The Federal Arbitration Act of 1924(FAA) expresses a strong national policy favoring arbitration of disputes, and all doubts concerning the arbitrability of claims should be resolved in favor of arbitration.[5]
Clearly, the trigger of the court’s power to compel arbitration is the existence of a presumptively valid arbitration agreement, contained within a contract signed by the parties. Chastain v. Robinson-Humphrey Company, 957 F.2d 851, 855 (11th Cir.1992). Thus, the first task of a court, asked to compel arbitration of a dispute, is to determine whether the parties agreed to arbitrate that dispute. Chastain, 957 F.2d at 854 (wherein the signature of one party to a securities trading account was alleged to have been forged, and it was held that it is for courts to decide whether the alleged ob-ligor ever signed the contract). Under normal circumstances, the Chastain court explained, an arbitration provision within a contract, which the contractual parties have admitted to signing, is sufficient to require the district court to send any controversies to arbitration. Under such circumstances, the parties have at least presumptively agreed to arbitrate any disputes, including those disputes about the validity of the contract in general. Because the making of the arbitration | sagreement itself is rarely in issue when the parties have signed a contract containing an arbitration pro *664 vision, the district court usually must compel arbitration immediately after one of the contractual parties so requests.
Jasper Contractors, Inc. v. E-Claim.com, LLC, 2011-0978, p. 9, n. 7 (LáApp. 1 Cir. 5/4/12), 94 So.3d 123, 130 n. 7.
In ruling on a motion to stay, a court must “first determine whether there is a written agreement to arbitrate”; then, “whether any of the issues raised are within the reach of that agreement.”[6] Courts have illustrated that if there is a broad arbitration clause, the action should be stayed, and that the FAA makes the stay mandatory in this sense.[7]
Louisiana Revised Statutes R.S. 9:4203 (the state counterpart to 9 U.S.C. § 4) allows a district court to ascertain only two basic facts before ordering arbitration: (1) whether there is a dispute as to the making of the agreement for arbitration, and (2) whether a party has failed to comply with the arbitration agreement; if the trial court determines that those two facts are not at issue, the court shall issue an order directing the parties to proceed to arbitration. Jasper Contractors, Inc. v. EClaim.com, LLC, 11-0978 at p. 12, 94 So.3d at 133.
DISCUSSION
This appeal involves two federal acts, the FAA and the LRRA, (as amended in 1986), purporting to preempt two Louisiana statutes (La.Rev.Stat. 22:1269 and 22:868). Both federal authorities have preemptive power over state laws in some respect. To determine whether the Cour-villes should be forced to arbitrate their claim in California, we analyze the preemptive effect of both federal statutes in isolation, discussing specifically how they each effect §§ 22:868 and 22:1269. The analysis is further complicated by the McCarran-Ferguson Act (“MFA”), another federal statute that acts to save state insurance laws from preemption. If the requirements of the MFA are met, it has the effect of “reverse preempting” federal |filaws, but only when the federal law does not regulate the business of insurance specifically, and the conflicting state statute does purport to do so. Even if the Cour-villes are correct that the MFA allows for reverse preemption of the FAA, there is still the preemptive potential of the LRRA. APIC argues that the LRRA, and not the FAA, is the federal law that supersedes §§ 22:868 and 22:1269. If APIC is correct, then it should not matter that the MFA may provide for reverse preemption as to the FAA. As long as either the FAA or the LRRA supersede Louisiana state law, the effects are the same: the conflicting state statute is displaced by the federal law.

1. The FAA and Federal Preemption

The arbitration provision relied upon by APIC states that “the right to compel arbitration pursuant to this Article shall be governed by the Federal Arbitration Act.” Enacted in 1924, Congress, through the FAA, abolished the common law rule against judicial enforcement of arbitration ' agreements.[8] Henceforth, arbitration agreements were to be treated with the same respect due any other contract.[9]
The FAA specifically allows arbitration clauses in contracts, , and makes no exception for insurance contracts. The FAA provides in pertinent part that “[a] *665 written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of. such contract ... or the refusal to perform the whole or any part thereof, ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.”[10] As a general rule, a valid arbitration clause in any contract 17should be enforceable under the FAA, which would preempt or supersede any Louisiana law to the contrary.[11] However, there are exceptions.

The McCarran-Ferguson Act and the Exception to FAA Preemption

In 1945, Congress enacted the McCar-ran-Ferguson Act in response to the United States Supreme Court’s decision in United States v. South-Eastern Underwriters Association, which held that the business of insurance is subject to federal regulation under the Commerce Provision.[12] The MFA had the effect of restoring the regulatory domain the States traditionally had exercised over the insurance industry prior to South-Eastern Underwriters.[13]
The MFA commits the regulation of insurance to state law by providing that any state law enacted for the purpose of regulating insurance will trump, or “reverse preempt,” any contrary federal law that does not relate specifically to insurance.[14] By establishing a federal policy deferring to state regulation of insurance matters, the MFA effectively “overturns the normal rules of preemption.”[15] To overcome any state’s authority to regulate insurance under the MFA, the federal law must contain a “clear statement” that it is meant to apply to the insurance business.[16]
The MFA, 15 U.S.C. § 1012, further provides:
(a) State Regulation
The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business.
(b) Federal Regulation
I «No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance.
Interpreting- this provision, courts have adopted a three-part test to determine when the MFA is applicable. The MFA will “reverse preempt” federal law making it inapplicable to state insurance law when (1) the federal statute is not specifically related to the insurance business, (2) the state statute at issue was enacted to regulate insurance, and (3) application of the federal statute would invalidate, impair, or supersede the state stat *666 ute.[17] The preceding test is “relevant, but not required.”[18]
To determine whether the specific Louisiana statutes fit the dynamics of the MFA and this three part test we examine each.

La.Rev.Stat 22:868:

Louisiana has enacted a statute that effectively prohibits the enforcement of arbitration provisions in the context of insurance disputes. Louisiana Revised Statutes 22:868 states, in pertinent part:
A. No insurance contract delivered or issued for delivery in this state and covering subjects located, resident, or to be performed in this state ... shall contain any condition, stipulation, or agreement either:
(1) Requiring it to be construed according to the laws of any other state or country except as necessary to meet the requirements of the motor vehicle financial responsibility laws of such other state or country.
(2) Depriving the courts of this state of the jurisdiction of action against the insurer.
Although it is not clear from this provision’s text that arbitration agreements are specifically voided, Louisiana courts have held that such agreements are | unenforceable because of this statute.[19] In addition to this prohibition on arbitration, APIC argues that LDAS is preempted.

La.Rev.Stat Ann. § 22:1269 (LDAS):

Louisiana provides a means for injured parties to sue insurers directly. Louisiana Revised Statutes Ann. 22:1269 (formerly La.Rev.Stat. Ann § 22:655), the LDAS, provides an injured person or his heirs/survivors with a right of direct action against the insurer. The LDAS provides, in pertinent part, as follows:

La.Rev.Stat. 22:1269(B)(1):

The injured person or his survivors or heirs mentioned in Subsection A of this Section, at their option, shall have a right of direct action against the insurer within the terms and limits of the policy; ■and, such action may be brought against the insurer alone, or against both the insured and the insurer jointly and in solido
[[Image here]]

La.Rev.Stat. 22;1269(B)(2):

This right of direct action shall exist whether or not the policy of insurance sued upon was written or delivered in the state of Louisiana and whether or not such policy contains a provision forbidding such direct action, provided the accident or injury occurred within the state of Louisiana.
Absent federal legislation to the contrary, the Courvilles have a right of direct action against APIC under this provision. It is uncontested that APIC is a risk retention group formed in Arizona, and, thus, they are an “insurer” for purposes of the LDAS. Also, the policy in question was delivered and issued in the state of Louisiana. The plain language of § 22:1269(B)(2) provides that even if language in the contract attempts to forbid direct action (like an arbitration clause would) such right is not altered in any way.
*667 ■J^jjANALYSIS
The Courvilles contend that the MFA reverse preempts the FAA with respect to § 22:868 and the LDAS. The Courvilles support this argument primarily with two court decisions, Sturgeon and Evans.
In Sturgeon v. Allied Professionals Insurance Company, 344 S.W.3d 205 (Mo.Ct.App.2011), the Missouri Court of Appeals held that the FAA was reverse preempted pursuant to the MFA. The Missouri statute in question was a prohibition of arbitration clauses in insurance contracts. In fact, the Missouri statute is almost identical to § 22:868.[20] The appeal in Sturgeon was taken by the same defendant in the present case, APIC. The Missouri court used the MFA three — prong analysis in reaching their decision. The court’s reasoning illustrated that the FAA did not regulate the business of insurance (element 1, supra) and that application of the FAA would “invalidate or supersede” Missouri’s statute prohibiting arbitration clauses in insurance contracts (element 3, supra).[21] As to the second factor in the MFA test, the court stated that the arbitration prohibition was enacted for the purpose of regulating the business of insurance, thus satisfying prong three of the MFA.[22]
The Courvilles also contend that Evans controls this issue. In Evans v. TIN, Inc., 2012 WL 2343162 (E.D.La. June 20, 2012), the issue was whether the LDAS reverse preempted the FAA, pursuant to the MFA. The court held that the MFA allows for reverse preemption of the FAA under the MFA, reasoning that “the FAA does not specifically relate to the business of insurance, that the LDAS was enacted for the purpose of regulating the business of insurance, and that the FAA In operates to ‘invalidate, impair, or super[s]ede’ the LDAS.”[23] As in Sturgeon, all three prongs of the MFA were satisfied, and the FAA failed to preempt the LDAS.
Following the reasoning in Sturgeon and Evans, the MFA would seemingly have the same effect in the present case. The biggest factor for determination in this case is whether the state laws in question regulate “the business of insurance.” Under Sturgeon, it is clear that the FAA does not regulate the business of insurance. It is also clear that application of the FAA over the authority of the LDAS or § 22:868 would act to “invalidate” or “supersede” the effects and purpose of those statutes. The LDAS has the effect of allowing injured parties to sue insurance companies of the alleged faulty party directly. It is primarily procedural in nature. The Sturgeon court stated that “[t]he fact that [a state law] addresses an arguably procedural aspect of the relationship between the insured and the insurer does not prevent it from being an integral part of their relationship.”[24] Thus, the LDAS does regulate the business of insurance. The same analysis goes for § 22:868. The fact that this provision acts to invalidate arbitration provisions only as to those included in insurance contracts, surely ensures that the second element of the MFA is satisfied. The rest of the analysis is the same for § 22:868 as it was for the LDAS. All elements of the MFA should be satisfied and the MFA should have the effect of saving the Louisiana statutes from pre- *668 eruption, at least insofar as the FAA is concerned.
This is not the end of the discussion, however. APIC suggests that Sturgeon and Evans are directly in conflict with three Supreme Court of the United States decisions. The three cases involve the FAA’s preemption of various state laws. However, it is important to note that none involve a state law regulating the business of insurance. If the state statute being preempted is not one specifically regulating the business of insurance, then the saving grace of the MFA will not 112apply, and is inapplicable in the analysis of the court. The trilogy of cases briefed by APIC on the issue of FAA preemption follow.
In AT & T Mobility LLC v. Conception, the 563 U.S. 333, 131 S.Ct. 1740, 179 L.Ed.2d 742 (2011), Supreme Court of the United States held that the FAA preempted the California rule known as the “Discover Bank mile,” which found arbitration clauses in certain consumer contracts unconscionable because they included a waiver of the consumer’s right to bring a class action lawsuit.[25] The respondents in this case sued AT & T in California Federal District Court alleging, fraud. At issue was a provision in AT & T’s cellular phone contract that mandated arbitration of all disputes and additionally prohibited class wide arbitration.[26] The Supreme Court reasoned that the FAA preempted the so-called “Discover Bank rule” because it stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress [in enacting the FAA].”[27]
In Marmet Health Care Center, Inc. v. Brown, — U.S. -, 132 S.Ct. 1201, 182 L.Ed.2d 42 (2012), the Supreme Court of the United States held that the FAA preempted West Virginia’s public policy against arbitration provisions in nursing home admission agreements. Specifically, the Court declared that West Virginia’s prohibition against pre-dispute agreements to arbitrate personal injury and wrongful death claims against nursing homes “is a categorical rule prohibiting arbitration of a particular type of claim,” and “that rule is contrary to the terms and coverage of the FAA.”[28]
Nitro-Lift Technologies, L.L.C. v. Howard, — U.S. -, 133 S.Ct. 500, 184 L.Ed.2d 328 (2012), addressed the issue of whether the Supreme Court of Oklahoma erred in holding a non-compete contract invalid, which included a mandatory arbitration clause. In this case, a dispute arose between the employer | 1sand employees, resulting in the employees filing suit in Oklahoma state court asking the court to declare the non-compete null. The state court dismissed the suit in favor of arbitration. On appeal, the Supreme Court of Oklahoma reversed the lower court, holding that the existence of an arbitration clause in a contract did not prevent judicial review of the underlying agreement.[29] Upon reaching the merits of the case, the Supreme Court of Oklahoma found the non-compete agreement unenforceable because it violated state law.[30] The Supreme Court of the United States ultimately vacated the decision finding that, while validity of the arbitration provi *669 sion is subject to initial court determination, the validity of the remainder of the contract is not.[31]
If the law and analysis ended here, we might be convinced that the MFA would reverse preempt the effects of the FAA, even in light of the trilogy of Supreme Court cases posed by APIC. While these cases expressly illustrate that the FAA does, in fact, have preemptive effect against state law abolishing arbitration clauses, none of these cases involve a state insurance statute. The Supreme Court’s analysis in all three cases cited by APIC are completely silent as to the MFA, because the MFA will only be applied to state insurance laws. APIC may actually agree with this, contention. While thoroughly briefing the narrow issue, above (FAA, MFA and “reverse preemption”), it ultimately claims the LRRA, not the FAA, is the applicable federal authority that preempts the LDAS and § 22:868. Accordingly, we briefly discuss the history and purpose of the LRRA.

2. The LRRA and Federal Preemption

In 1981, Congress enacted the Product Liability Risk Retention Act of 1981 (“PLRRA”), creating risk retention groups (“RRGs”), a new type of self-insurance. I uThe PLRRA was designed to encourage the formation and growth of RRGs by reducing state regulation of them, thereby reducing the expenses of RRGs and the cost of insurance to RRG members. An RRG formed under the authority of the PLRRA is permitted to provide product liability insurance in all states, free from insurance regulation by those states, if it complies with the insurance laws of the state it chooses as its “chartering jurisdiction.” [32]
, RRGs are different from normal insurance companies. A risk retention group is a liability insurance company owned and operated by its members, and those members are its insureds. Risk retention groups offer commercial liability insurance for the mutual benefit of those owner-insureds. They do not sell insurance to the general public; they only sell insurance to members of the RRG who are exposed to similar risks and are members of the same industry. Rather than creating a full regulatory scheme for RRGs, the PLRRA provided that an RRG that had been approved by the insurance authority of any state could act as a RRG in any and all other states, leaving the authority to regulate the RRG to the chartering jurisdiction in which it was formed. Once a RRG was approved and formed in one state, that state’s minimum capitalization and other insurance regulations were binding on all other states.[33] In order to give effect to Congress’ scheme, the act expressly preempted regulation of RRGs by any other state other than the one which chartered the group.[34]
Five years later, the PLRRA was amended by enacting the Liability Risk Retention Act of 1986 (LRRA). This act had the effect of expanding the scope of coverage RRGs could provide, to all types of insurance.[35] As was the case under the PLRRA, an RRG formed under the LRRA is permitted to provide liability | ^insurance, in all states, free from regula *670 tion by those states, so long as it complies with the laws of the state it chooses as its chartering jurisdiction.[36] While leaving the preemptive provisions intact, Congress enumerated exceptions allowing nonchar-tering states the authority to regulate insurance.[37] Such specific exceptions are shielded from preemption, however, they are not relevant to the facts of this case. The pertinent language of the LRRA is as follows:
(a) Except as provided in this section, a risk retention group is, exempt from any State law, rule, regulation, or order to the extent that such law, rule, regulation, or order would—
(1) make unlawful, or regulate, directly or indirectly, the operation of a risk retention group except that the jurisdiction in which it is chartered may regulate the formation and operation of such a group[38] [ (Emphasis added) ].
APIC makes multiple arguments for reasons why the LRRA preempts both Louisiana statutes at issue. First, APIC suggests that the regulatory scheme adopted by Louisiana in La.Rev.Stat. Ann. §§ 22:483 and 22:484 provide distinctions between “domestic RRGs” and “foreign RRGs,” and that this distinction allows the interpretation that the LDAS does not apply to “foreign RRGs,” such as APIC. It further contends that the language of the LRRA prohibits state statutes from regulating the operations of RRGs, and application of the LDAS and/or § 22:868 would be an attempt to do so. It also argues that the Courvilles bringing it into' Louisiana under the LDAS would grant the Cour-villes, a party with whom they are not in contractual privity, a right it would not otherwise have had against them.
The regulatory scheme of §§ 22:483 (pertaining to domestic RRGs) and 22:484 (pertaining to foreign RRGs) are known as the “Risk Retention Group | ifiLaw.” APIC argues that these Louisiana state laws prohibit the application of LDAS to it since it is a foreign RRG. The language of § 22:483 states that domestic RRGs “shall comply with all of the laws, rules, regulations, and requirements applicable to such insurers chartered and licensed in this state....”[39] The language applicable to foreign RRGs is different. They “shall observe and abide by the laws of this state governing the formation and operation of a risk retention group and the provisions of the federal Risk Retention Amendments of 1986, as amended.”[40] APIC contends that because § 22:484 fails to mandate compliance with “all of the laws ... in this state,” as § 22:483 does, that foreign RRGs like APIC are absolved from abiding by most of Louisiana’s laws, specifically the LDAS. Further, APIC suggests that § 22:484 lists the requirements that apply to foreign RRGs, and there is no requirement that they comply with any portion of the LDAS. The Cour-villes counter that § 22:484 does not state that the LDAS is inapplicable to foreign RRGs. They further note that § 22:484 requires foreign RRGs to designate an agent for service of process, and thus, it would only make sense that the Louisiana legislature intended the LDAS to apply to foreign RRGs as well as domestic. Since Louisiana’s objective is to regulate foreign *671 RRGs to the extent permitted by federal law, it would seem that the LDAS was not intended to apply to them.
APIC’s second point is that, even if it is brought in pursuant to the LDAS, the LRRA preempts § 22:868, and thus, the parties must arbitrate their claim. The LRRA prohibits a state from “regulating” the “operations of RRGs” either “directly or indirectly.”[41] APIC argues that the LRRA preempts the LDAS and § 22:868 because application of either law would “fundamentally alter the way it does business,” and are attempting to “regulate the operation of [APIC].” The |17main authority cited by APIC for this proposition is Central Claims Services, Inc. v. Claim Professionals Liability Ins. Co., 2011 WL 3898047 (E.D.La. Sept. 2, 2011).
In 2011, the Federal District Court of the Eastern District of Louisiana ruled on the issue of whether the MFA allows La. Revised Statute 22:868 to reverse preempt the LRRA. They held that the LRRA preempts 22:868, stating:
As has been previously discussed, the application of La. R.S. 22:868 would invalidate the arbitration agreement in place in this case. One of the reasons coverage to risk retention group members is more affordable is the inclusion of arbitration clauses in each of the agreements signed by the parties. (Rec. Doc. No. 17 at 3). By prohibiting arbitration, costs of litigation will increase significantly as compared to arbitration proceedings, which are designed to minimize litigation costs and promote the just and speedy resolution of disagreements between the group and a shareholder. Prohibiting arbitration under Louisiana law will adversely effect Defendant’s operations, a risk retention group founded in Vermont. Applying this scenario to the LRRA, in light of previously cited jurisprudence, it appears the forgoing effect is what the LRRA seeks to avoid.[42] [Emphasis added].
This language strongly supports APIC’s position. Under Central Claims, it appears that § 22:868 would be preempted by the LRRA, because application of § 22:868 would “adversely effect [APIC’s] operations,” which is expressly disallowed in the LRRA.[43] However, Central Claims makes no mention of the LRRA’s preemption of the LDAS, nor does it address the issue of whether preemption would occur if the party seeking redress was a third party nonsignatory to the insurance agreement.
The Courvilles specifically address the issue of LRRA’s preemption of the LDAS, relying on Collins v. AAA Rent All, Inc., 812 F.Supp. 642 (M.D.La.1993). This case held that “[although 15 U.S.C. § 3901 et seq., exempts risk retention groups from certain state regulations, it does not expressly or impliedly preempt La. Revised Statute 22:655 [now La.Rev.Stat. 22:1269] which permits a plaintiff 11Rto directly sue the insurer of the defendant.”[44] In addition to these eases¡ the Courvilles offer another argument: both the LDAS and § 22:868 are not attempting to regulate the formation or operation of RRGs. Rather, they claim that the state laws apply to all insurance businesses across the board and are not specifically targeting RRGs; thus they cannot be preempted by the exclusion clause contained in the LRRA.
*672 Wadsworth v. Allied Professionals Ins. Co., 748 F.3d 100 (2d Cir.2014)
Recently, the United States Court of Appeal Second Circuit weighed in on these exact issues in relation to New York’s direct action statute. While somewhat different from Louisiana’s direct action statute, the principles involved are the same. In New York, once an injured party has obtained a judgment for damages against an insured he/she may bring an action against the insurer if the judgment remains unsatisfied after thirty days from the date of serving notice of the judgment on the attorney for the insurer. The court of appeal discussed the effect of the MFA, the FAA, and the LRRA on this law and concluded the LRRA preempted the application of New York’s direct action statute to foreign RRGs. The Wadsworth court found:
Even given the general presumption, specifically reinforced by the McCarran-Ferguson Act, that insurance regulation is generally left to the states, the language and purpose of the LRRA clearly announce Congress’s explicit intention to preempt state laws regulating risk, retention groups....
[[Image here]]
Plainly, §§ 3902(a)(2) and (3) are not directed toward placing risk retention groups “on equal footing” with traditional insurers. To the contrary, both of those provisions excuse risk retention groups from certain requirements that states may and typically do impose upon insurers licensed within that state. Moreover, § 3902(a)(4) expressly prohibits discrimination against risk retention groups.... Congress specifically preempted “any” law, rule, or regulation by a nondomiciliary state that would “regulate, directly or indirectly, the operation of a risk retention group.” 15 U.S.C. § 3902(a)(1) (emphasis added). A clearer prohibition would be hard to devise....
|inFo'r these reasons, we have read the LRRA’s preemption language broadly. In enacting the LRRA, we have held, Congress desired “to decrease insurance rates and increase the availability of coverage by promoting greater competition within the insurance industry.” Preferred Physicians, 85 F.3d at 914, citing H.R.Rep. No. 99-865,1986 U.S.C.C.A.N. 5303, 5304-06. “[T]he legislative history of the Act makes clear that Congress intended to exempt [risk retention groups] broadly from state law ‘requirements that make it difficult for risk retention groups to form or to operate on a multi-state basis.’ ” Id. at 915-16, citing 1986 U.S.C.C.A.N. 5303, 5805. An expansive reading of the preemption language furthers the Act’s purpose. Id. at 915.
Wadsworth v. Allied Professionals Ins. Co., 748 F.3d at 105-107 (footnotes omitted)
We recognize that we are not bound by decisions of the federal courts. However, we find this analysis to be pertinent and compelling as applied to the LDAS. Therefore, we find that 22:868 is preempted by a federal statute, and the order compelling arbitration should be affirmed.
We find that there is a valid agreement to arbitrate and any claim the Courvilles might have against APIC is subject to arbitration. We also find that there is no statute that renders the dispute nonarbitrable. Because of the MFA, the FAA is inapplicable and does not require arbitration in this case. However, we find that 22:868 is preempted by the LRRA. Thus, LDAS is inapplicable to risk retention groups chartered in another state.
We also find that there is no reason to continue the stay in this matter. *673 The arbitration agreement is between APIC and Dr. Rathmann and/or the clinic. There is no arbitration agreement between the Courvilles and the clinic or Dr. Rath-mann. While we have found that any claims against APIC must be submitted to arbitration, any claims against Dr. Rath-mann and/or the clinic may proceed forward in state district court.
CONCLUSION
We find that the agreement between Dr. Rathmann and APIC is a valid agreement to arbitrate. We also find that there is no statute that renders the dispute 120nonarbitrable. Because of the MFA, the FAA is inapplicable to insurance issues and does not require arbitration. However, we find that § 22:868 is preempted by the LRRA which is exempt from state law. Thus, Louisiana’s Direct Action Statute is inapplicable to risk retention groups chartered in another state. Therefore, any claims against APIC are subject to arbitration. However, any claims by the Courvilles against Dr. Rathmann and/or the clinic are not subject to arbitration and may proceed forward.
We find that there is no reason to continue the stay in this matter. The arbitration agreement is between APIC and Dr. Rathmann and/or the clinic. There is no arbitration agreement between the Cour-villes and the clinic or Dr. Rathmann. While we have found that any claims against APIC must be submitted to arbitration, any claims against Dr. Rathmann and/or the clinic may proceed forward in state district court.
For these reasons, we affirm in part the judgment of the trial court granting the Motion to Compel Arbitration between APIC, Dr. Rathmann, and/or the Clinic. We reverse in part the trial court’s judgment ordering arbitration between the Courvilles, Dr. Rathmann, and/or the Clinic. We lift the stay that has been in effect. Costs are assessed equally between the parties.
AFFIRMED IN PART, REVERSED IN PART, STAY LIFTED.

.Hennecke v. Canepa, 96-0772 (La.App. 4 Cir. 5/21/97), 700 So.2d 521, writ denied, 97-1686 (La.10/3/97), 701 So.2d 210.
A determination regarding whether to stay or to compel arbitration is a question of law. Saavedra v. Dealmaker Developments, LLC, 08-1239, p. 6 (La.App. 4 Cir. 3/18/09), 8 So.3d 758, 762, writ denied, 09-0875 (La.6/5/09), 9 So.3d 871 (citing Billieson v. City of New Orleans, 02-1993, p. 3 (La.App. 4 Cir. 9/17/03), 863 So.2d 557, 560). Accordingly, an appellate court reviews questions of law to determine whether the trial court was legally correct or incorrect. Id. Specifically, an appellate court "should consider de novo issues of law concerning whether the dispute was within the scope of the arbitration agreement, unless the parties also clearly agreed that the issue of whether a dispute was arbi-trable was subject to arbitration.” Rain CII Carbon LLC v. ConocoPhillips Co., 12-0203, p. 6 (La.App. 4 Cir. 10/24/12), 105 So.3d 757, 761, writ denied 12-2496 (La.1/18/13), 107 So.3d 631.

. Evans v. TIN, Inc., 2012 WL 2343162, p. 2 (E.D.La. June 20, 2012).

. Id.

. Id.

. Id.

. Complaint of Hornbeck Offshore (1984) Corp., 981 F.2d 752, 754 (5th Cir.1993).

. Id.

. Sturgeon v. Allied Professionals Ins. Co., 344 S.W.3d 205, 212 (Mo.Ct.App.2011).

. Id.

. 9 U.S.C. § 2.

. U.S. Const., Art. VI, cl. 2.

. 322 U.S. 533, 552-53, 64 S.Ct. 1162, 1173-75, 88 L.Ed. 1440 (1944).

. St. Paul Fire & Marine Ins. Co. v. Barry, 438 U.S. 531, 538-39, 98 S.Ct. 2923, 2927-28, 57 L.Ed.2d 932.

.15 U.S.C. § 1012(b).

. U.S. Dept. of Treasury v. Fabe, 508 U.S. 491, 507, 113 S.Ct. 2202, 2211, 124 L.Ed.2d 449 (1993).

. Id..; see also 15 U.S.C. § 1011. ("[S]ilence on the part of Congress shall not be construed to impose any barrier to the regulation ... of such business by the several States.”)

. Am. Bankers Ins. Co. of Florida v. Inman, 436 F.3d 490, 493 (5th Cir.2006).

. Central Claims Service, Inc. v. Claim Professionals Liability Ins. Co., 2011 WL 3898047, p. 2 (E.D.La. Sept.2, 2011).

.Safety Nat. Cas. Corp. v. Certain Underwriters At Lloyd's, London, 587 F.3d 714, 719 (5th Cir.2009), cert. denied, 562 U.S. 827, 131 S.Ct. 65, 178 L.Ed.2d 22 (2010).

. Id. at 209.

. Id.

. Id.

. Evans v. TIN, Inc., at 10.

. Sturgeon v. Allied Professionals Insurance Company, 344 S.W.3d, at 214.

. AT & T Mobility LLC v. Concepcion, 131 S.Ct. 1740 at 1746.

. Id. at 1742.

.Id. at 1745, 1753.

. Marmet Health Care Ctr., Inc. v. Brown, 132 S.Ct. at 1204.

. Id.

. Id.

. Id. at 503.

. National Warranty Ins. Co. RRG v. Greenfield, 214 F.3d 1073, 1075 (9th Cir.2000), citing 15 U.S.C. § 3901(4)(C)(i).

. National Risk Retention Ass’n v. Brown, 927 F.Supp. 195, 197 (M.D.La.1996) affirmed, 114 F.3d 1183 (5th Cir.1997) ’

. Id.

. Id.

. National Warranty Ins. Co. RRG v. Greenfield, supra, 214 F.3d at 1075, citing 15 U.S.C. § 3901(4)(C)(i); National Risk Retention Ass'n v. Brown, supra, 921 F.Supp. at 199.

. 15 U.S.C. § 3902(a), (b).

. 15 U.S.C. § 3902(a)(1).

. La.Rev.Stat. 22:483(A).

- La.Rev.Stat. 22:484(A).

. 15 U.S.C. § 3902(a)(1).

. Id. at p. 5.

. 15 U.S.C. § 3902(a)(1).

. Id. at 644.