# Supreme Court of Louisiana

The Opinions handed down on the **8th day of May, 2019**, are as follows:

**BY CRICHTON, J.**:

2018-CC-0748      CREEKSTONE JUBAN I, L.L.C. v. XL INSURANCE AMERICA, INC. (Parish of Livingston)

We granted this writ to resolve the question of whether La. R.S. 22:868(A)(2) prohibits the enforcement of the forum selection clause in dispute. For the reasons set forth below, we find that the statute does not prohibit enforcement of the forum selection clause to which these parties contractually agreed. Accordingly, we reverse the ruling of the trial court and remand the matter to the trial court for further proceedings pursuant to La. Code Civ. P. art. 121. REVERSED AND REMANDED.

JOHNSON, C.J., additionally concurs and assigns reasons.

WEIMER, J., concurs and assigns reasons.

HUGHES, J., dissents with reasons.

GENOVESE, J., dissents for the reasons assigned by Justice Hughes.

SUPREME COURT OF LOUISIANA

No. 2018-CC-0748

CREEKSTONE JUBAN I, L.L.C.

VERSUS

XL INSURANCE AMERICA, INC.

ON SUPERVISORY WRITS TO THE TWENTY-FIRST JUDICIAL
DISTRICT COURT, PARISH OF LIVINGSTON

**CRICHTON, J.**

We granted this writ to resolve the question of whether La. R.S. 22:868(A)(2) prohibits the enforcement of the forum selection clause in dispute. For the reasons set forth below, we find that the statute does not prohibit enforcement of the forum selection clause to which these parties contractually agreed. Accordingly, we reverse the ruling of the trial court and remand the matter to the trial court for further proceedings pursuant to La. Code Civ. P. art. 121.

## FACTS AND HISTORY

This case concerns a disagreement over a claim for flood damage submitted by Plaintiff-Respondent Creekstone/Juban I, LLC ("Creekstone"), a Delaware limited liability company, under a commercial property and casualty insurance policy ("Policy") issued by Defendant-Appellant XL Insurance America, Inc. ("XL Insurance"), a Delaware corporation. The Policy was issued to named insured MRMG Commercial and delivered to MRMG Commercial in Lufkin, Texas. According to the parties, though not evident from the record, Creekstone was one of 20 unrelated additional insureds who obtained coverage under the Policy, which covers over 100 properties in more than 20 states.[1]

---

[1] The parties have explained that MRMG is a program put together by an insurance broker in order to pool together groups of unrelated insureds with common operations to form risk-purchasing

Creekstone is the owner of the insured property (commonly known as Juban Crossing), located in Livingston Parish, which consists of high-end, multi-use facilities for retail sales, restaurants, and a theater. Creekstone is a Delaware limited liability company. It is a single asset company that has no business other than Juban Crossing. The managing member of Creekstone is a Louisiana resident, and Creekstone's principal business office is in Baton Rouge. XL Insurance is a Delaware corporation, licensed within Louisiana and admitted by the Louisiana Department of Insurance to issue various lines of insurance, including property and casualty insurance. XL Insurance's address on file with the Louisiana Department of Insurance is in Connecticut.

The Policy includes a forum selection clause, whereby the parties agreed that "any disagreement" related to the Policy "shall" be brought exclusively in the State of New York. The clause states, in pertinent part:

### 19. SERVICE OF SUIT AND CHOICE OF LAW

In the event that any disagreement arises between the "insured" and the "Company" requiring judicial resolution the "insured" and the "Company" each agree that any suit shall be brought and heard in a court of competent jurisdiction within the State of New York. The "Insured" and the "Company" further agree to comply voluntarily with all the requirements necessary to give such court jurisdiction. . . .

The "Insured" and the Company" further agree that New York law shall control the interpretation, application and meaning of this contract, whether in suit or otherwise.

In August 2016, as a result of a massive flood, Juban Crossing sustained extensive flood damage to the buildings and their contents, including loss of revenue. Before the lawsuit was filed, XL Insurance forwarded to Creekstone $5,000,000. However, due to various issues in dispute that are not before this Court, XL

---

groups and obtain more favorable insurance terms. No party disputes that Creekstone is a named insured under the Policy.

2

Insurance did not immediately pay Creekstone certain additional requested sums, and Creekstone filed suit in the Twenty-First Judicial District Court, Parish of Livingston.

In response, XL Insurance filed a Declinatory Exception of Improper Venue, Peremptory Exception of No Cause of Action, and Motion to Dismiss. XL Insurance argued that in the forum selection clause, the parties agreed to litigate all issues involving the contract exclusively in the State of New York. Creekstone opposed the motion, contending that the forum selection clause was invalid under La. R.S. 22:868, which provides that no insurance contract "delivered or issued for delivery" in Louisiana and covering subjects in Louisiana shall contain any provision "[d]epriving the courts of this state of the jurisdiction of action against the insurer." Pursuant to La. R.S. 22:868, any such provision would be void. After a hearing, the trial court overruled XL's exceptions and motion, finding that upholding the forum selection clause would violate Louisiana's public policy.[2]

XL Insurance filed an application for supervisory writs, and the Court of Appeal, First Circuit, granted certiorari. After full briefing and argument, a five-judge panel denied the writ in a split decision and without opinion. *Creekstone Juban I, LLC v. XL Insurance America, Inc.*, No. 17-1223 (La. App. 1 Cir. 4/9/18). Judge Crain wrote separately, stating that he favored denying the writ, because the forum selection clause "effectively deprives Louisiana courts of the ability to exercise

_____

[2] In a supplemental brief, XL Insurance disputes whether La. R.S. 22:868 applies in this case, asserting that the policy was not "delivered or issued for delivery" to Creekstone in Louisiana, but was instead "issued for delivery to MRMG Commercial" in Texas. By contrast, Creekstone argues it has always maintained the policy was delivered in Louisiana and points out XL had never before disputed this contention. We agree with Creekstone that the statute applies here. The trial court's judgment demonstrates that it found La. R.S. 22:868 applies to this case, thereby implicitly demonstrating the court made a factual finding that the policy was delivered or issued for delivery in Louisiana. Although we disagree with the trial court's analysis regarding R.S. 22:868(A)(2), as set forth further herein, we find no manifest error in the trial court's factual finding that R.S. 22:868 is applicable to this case.

3

jurisdiction over this case." *Id.* p. 2. Judge Guidry and Judge Holdridge dissented from the writ denial, stating they would grant the writ application and reverse the trial court because, in their opinion, the contractual forum selection clause does not deprive the court of jurisdiction and does not violate Louisiana public policy.

This Court thereafter granted XL Insurance's application for supervisory writs. 2018-0748 (La. 9/28/18), 252 So. 3d 918.

## **DISCUSSION**

Legislation is the solemn expression of the legislative will; thus, the interpretation of legislation is primarily the search for the legislative intent. *Cat's Meow, Inc. v. City of New Orleans,* 98-0601, p.15 (La. 10/20/98), 720 So. 2d 1186, 1198. *See also* La. R.S. 24:177(B)(1). The starting point for interpretation of any statute is the language of the statute itself. *Id.* When a law is clear and unambiguous, and its application does not lead to absurd consequences, it shall be applied as written, with no further interpretation made in search of the legislative intent. *Id.*; La. R.S. 1:4. Further, a statute must be interpreted and applied in a manner consistent with logic and the presumed fair purpose and intention of the legislature in passing it. *MAW Enterprises, L.L.C. v. City of Marksville*, 14-0090, p. 12 (La. 9/3/14), 149 So. 3d 210, 218. It is presumed that the intention of the legislative branch is to achieve a consistent body of law. *Id*

With these principles in mind, we turn to the statute at issue in this case. The narrow legal question presented is whether the forum selection clause in the XL Insurance policy, which requires that litigation be brought in New York state, violates La. R.S. 22:868 and Louisiana public policy. Revised Statute 22:868 provides, in pertinent part:

4

A. No insurance contract delivered or issued for delivery in this state and covering subjects located, resident, or to be performed in this state, . . . , shall contain any condition, stipulation, or agreement either:

(1) Requiring it to be construed according to the laws of any other state or country except as necessary to meet the requirements of the motor vehicle financial responsibility laws of such other state or country.

(2) Depriving the courts of this state of the jurisdiction of action against the insurer.

Contractual forum selection clauses are *prima facie* valid and are enforced in Louisiana "unless the resisting party can 'clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching . . . [or that] enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision.'" *Shelter Mutual Ins. Co. v. Rimkus Consulting Group, Inc. of La.,* 2013-1977, p. 16-17 (La. 7/1/14), 148 So. 3d 871, 881 (Johnson, C.J.) (quoting *Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 13 (1972)). In *Shelter Mutual*, this Court explained the evolution of forum selection clauses, noting that they were historically found to be invalid as against public policy or that their effect was to impermissibly "oust the jurisdiction" of a court. 2013-1977, p. 4, 148 So. 3d at 874. However, a shift occurred after the Supreme Court's decision in *Bremen v. Zapata Offshore Co.*, in which the Supreme Court described this view as a "vestigial legal fiction," that has "little place in an era when all courts are overloaded and when businesses once essentially local now operate in world markets." 407 U.S. at 12. The *Bremen* Court held that forum selection clauses "should be deemed presumptively valid and ordinarily enforceable, unless enforcement would be unreasonable, or the consent of the party challenging the clause was obtained through fraud or undue influence, or the chosen forum is unreasonable and seriously inconvenient." *Shelter Mutual*, 2013-1977, p.4-5, 148 So. 3d at 874 (describing *Bremen* holding). This Court

5

adopted the *Bremen* view in *Shelter Mutual*, holding that "[t]he right of parties to freely contract must encompass the correlative power to agree to bring suit under that contract in a particular forum." *Shelter Mutual*, 2013-1977, p. 17, 148 So. 3d at 882.

Creekstone argues that the Legislature expressed a clear public policy, by way of La. R.S. 22:868, to prohibit the operation of forum selection clauses in Louisiana, and that the forum selection clause violates La. R.S. 22:868(A)(2) because it divests the Louisiana court of the ability to hear the dispute and thereby vitiates jurisdiction in Louisiana. XL Insurance argues, to the contrary, that the statute's plain language addresses jurisdiction only and forum selection clauses do not deprive the Louisiana court of *jurisdiction* over the action. Rather, the clause at issue sets forth a contractual agreement that New York is the proper *venue* for any action under the Policy, and leaves the court's subject matter jurisdiction unaffected.

## A. The Plain Language of the Statute Favors the Insurer

The Code of Civil Procedure defines "jurisdiction" as "the legal power and authority of a court to hear and determine an action or proceeding involving the legal relations of the parties, and to grant the relief to which they are entitled." La. C.C.P. art. 1. This Court has previously explained that jurisdiction and venue are distinct legal concepts: "If jurisdictional requirements are met, courts throughout the state have the legal power and authority to hear the case; however, ***not all courts with jurisdiction are in the proper venue.***" *Turner v. Leslie*, 96-2288, p.2 (La. 12/6/96), 684 So. 2d 395, 396 (emphasis added). Accordingly, where the parties have contracted for a particular forum or venue for litigating disputes, this does not mean they have deprived the courts of this state of the legal authority to hear the dispute (*i.e.*, the jurisdiction). And, as noted above, the Court cited *Bremen* in *Shelter Mutual*

6

for the proposition that "the traditional view that forum selection clauses impermissibly oust courts of jurisdiction" is a "vestigial legal fiction." *Shelter Mutual*, 2013-1977, p.4-5, 148 So. 3d at 874. Thus, it is apparent that the plain language of La. R.S. 22:868(A)(2) does not prohibit the forum selection clause at issue in this case, as it chooses New York as the ***venue*** for the dispute, and does not deprive Louisiana courts of ***jurisdiction***.

Our interpretation of the plain language is reinforced by the Court's recent analysis in *Shelter Mutual*. *Shelter Mutual* addressed the validity of a forum selection clause in a business contract and resolved a split in the appellate courts over whether the clause violated public policy. In evaluating the statute at issue in that case, this Court recognized that the legislature has enacted a limited number of statutes making forum selection clauses unenforceable in certain specific situations. The Court singled out several statutes, observing that the legislature has been "unequivocal" in enacting such statutes in at least three instances: (a) cases brought under the Louisiana Unfair Trade Practices Act;[3] (b) construction contracts involving a Louisiana domiciliary in which the work to be done is in Louisiana;[4] and

---

[3] La. R.S. 51:1407(A) ("It being against the public policy of the state of Louisiana to allow a contractual selection of ***venue or jurisdiction*** contrary to the provisions of the Louisiana Code of Civil Procedure, no provision of any contract which purports to waive these provisions of ***venue***, or to ***waive or select venue or jurisdiction*** in advance of the filing of any civil action, may be enforced against any plaintiff in an action brought in these courts.") (emphasis added).

[4] La. R.S. 9:2779(A) (The legislature finds that, with respect to construction contracts, subcontracts, and purchase orders for public and private works projects, when one of the parties is domiciled in Louisiana, and the work to be done and the equipment and materials to be supplied involve construction projects in this state, provisions in such agreements requiring disputes arising thereunder to be resolved in a ***forum*** outside of this state or requiring their interpretation to be governed by the laws of another jurisdiction are inequitable and against the public policy of this state) (emphasis added). *See also* La. R.S. 9:2779(B)(2) ("The legislature hereby declares null and void and unenforceable as against public policy any provision in a contract, subcontract, or purchase order, as described in Subsection A, which . . . [r]equires a suit or arbitration proceeding to be brought in a ***forum or jurisdiction*** outside of this state. . .") (emphasis added).

(c) cases involving employment contracts.[5] *Shelter Mutual*, 2013-1977, p. 7-9, 148 So. 3d at 879-82. After reviewing these statutes, the *Shelter Mutual* Court held:

> It is clear the legislature has only declared forum selection clauses unenforceable and against public policy in ***very limited circumstances***. We reject a blanket application of the public policy stated in these statutes to every contractual forum selection clause. The legislature has clearly provided for a more limited application, and has recognized Louisiana's public policy only militates against the use of forum selection clauses ***in these particular circumstances***. The legislature has been ***unequivocal in these specific contexts*** to establish that forum selection clauses contravene a strong public policy in Louisiana. . . .

2013-1977, p. 16-17, 148 So. 3d at 881 (emphasis added).

We reemphasize this point here. It is presumed that the intention of the legislative branch is to achieve a consistent body of law. *MAW Enterprises*, 14-0090, p. 12, 149 So. 3d at 218. When the legislature has acted to prohibit forum selection clauses, it has been unequivocal, employing the terms "venue" or "forum," thereby distinguishing the concepts from jurisdiction. Thus, the legislature is plainly aware of how to draft laws that unambiguously prohibit forum selection clauses, does so in very limited and specific contexts, and did not do so in La. R.S. 22:868(A)(2).[6]

We also find it persuasive that a unanimous three-judge panel of the United States Court of Appeals for the Fifth Circuit, sitting in diversity and applying Louisiana law, recently cited *Shelter Mutual* in making the same conclusion regarding R.S. 22:868. *Al Copeland Investments, LLC v. First Specialty Ins. Corp.*, 884 F.3d 540 (5th Cir. 2018). In *Al Copeland*, as here, the insurer moved to dismiss the federal court case brought in the United States District Court for the Eastern District of Louisiana based upon the fact that the policy's forum-selection clause

---

[5] R.S. 23:921(A)(2) ("The provisions of every employment contract or agreement . . . [that] includes a ***choice of forum clause*** or choice of law clause in an employee's contract . . . shall be null and void . . .") (emphasis added).

[6] Notably, the legislature did not amend this statute after this Court's decision in *Shelter Mutual*.

required litigation in a New York state court. The Fifth Circuit acknowledged that the narrow issue of R.S. 22:868 was unresolved by this Court, but held that R.S. 22:868 "does not indicate that Louisiana has a strong public policy against forum-selection clauses in insurance contracts" and found the clause at issue enforceable. *Id.* at 545. In so holding, the court rejected the plaintiff's argument conflating jurisdiction and venue, reasoning:

> A forum-selection clause is a provision in a contract that mandates a particular state, county, parish, or court as the proper venue in which the parties to an action must litigate any future disputes regarding their contractual relationship. Section 22:868 says nothing about venue. As the district court recognized, venue and jurisdiction are "separate and distinct." We, too, will not stretch the definition of jurisdiction to include venue—a feat with no legal footing.

884 F.3d at 543-44.

We agree with this analysis, and decline to extend the definition of "jurisdiction"—which is clearly defined in the Civil Code—to include "venue" or "forum."[7]

### B. No Absurd Consequences Will Result

Creekstone argues that if the law is applied as written, absurd consequences will result, because a dispute over any insurance policy, "no matter how small," will have to be litigated in a foreign forum. This argument is not persuasive. In

---

[7] In supplemental briefing, Creekstone argues that the forum selection clause, which also contains a choice of law provision requiring application of New York law, is void pursuant to R.S. 22:868(A)(1). R.S. 22:868(A)(1) prohibits any condition that requires the contract to be "construed according to the laws of any other state or country. . ." XL Insurance filed in the trial court a Declinatory Exception of Improper Venue based upon the forum selection clause in the Policy. Therefore, venue was the issue properly before the trial court. Creekstone made no argument as to how R.S. 22:868(A)(1) would invalidate an otherwise valid forum selection clause, and instead merely made the conclusory argument that the section is "void altogether." Even if the Policy's choice of law provision is invalid due to Louisiana's public policy concern as expressed in R.S. 22:868(A)(1)—an issue we decline to decide here—R.S. 22:868(C) expressly states that the voiding of any condition under R.S. 22:868(A) "shall not affect the validity of the other provisions of the contract." Thus, even if the choice of law provision were to be invalidated, that invalidation, by the terms of the statute, would not affect the validity of the forum selection clause. *See*, *e.g.*, *Al Copeland Investments, LLC v. First Specialty Ins. Corp.*, 16-16346, 2017 WL 2831689 (E.D. La. June 29, 2017).

9

determining whether enforcement of a forum selection clause would be unreasonable and unjust, courts generally require the party seeking to avoid its enforcement to bear the burden of showing that the chosen forum is "unreasonable or seriously inconvenient." *Shelter Mutual*, 2013-1977, p. 5, 148 So. 3d at 874 (quoting *Bremen*, 407 U.S. at 16-17). Because the claimed inconvenience is foreseeable at the time the parties negotiated the contract, it is incumbent on the party seeking to escape the contract to show that trial in the contractual forum will be "so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court." *Bremen*, 407 U.S. at 17-18.

Creekstone has not met its high burden in this case. The parties to this contract are sophisticated Delaware entities engaging in a commercial transaction, and they exercised contractual freedom to resolve any dispute related to the contract in a particular forum in arm's-length negotiations. *See Shelter Mutual*, 2013-1977, p. 18, 148 So. 3d at 882 ("The parties in this case are commercially sophisticated entities who have a history of conducting business together."); *Bremen*, 407 U.S. at 16-17 (noting that this was a freely negotiated "commercial transaction").[8] In any event, at the exceptions hearing, Creekstone offered no evidence whatsoever of difficulties it would encounter in litigating in another forum, much less any evidence sufficient meet its high burden of establishing "grave difficulties."

Indeed, freedom to contract is itself a countervailing important public policy in Louisiana, and the right to freely contract "must encompass the correlative power to agree to bring suit under that contract in a particular forum." *Shelter Mutual*, 2013-1977, p. 17, 148 So. 3d at 882. As in *Shelter Mutual*, upholding the trial court's

---

[8] This case does not present us with a situation involving a single Louisiana resident in a dispute with a residential property or motor vehicle insurer, and we decline to resolve that situation here.

ruling in this case would undermine the ability of the parties to freely engage in sophisticated contractual agreements and thereby impair the ability of companies to do business in this state. *Id.* Contractually selecting a forum for resolving disagreements provides certainty and consistency for parties engaged in enterprises in multiple states, and the elimination of uncertainty "relative to the location of litigation by agreement in advance of an acceptable forum to both parties is an indispensable element of trade, commerce and contracting." *Shelter Mutual*, 2013-1977, p. 18, 148 So. 3d at 882.

## CONCLUSION

For the reasons assigned, the judgment of the trial court is reversed insofar as it denied the exception of improper venue. The exception of improper venue is hereby granted. The case is remanded to the trial court for further proceedings pursuant to La. Code Civ. P. art. 121.

11

## SUPREME COURT OF LOUISIANA

## No. 2018-CC-0748

## CREEKSTONE JUBAN I, L.L.C.

## VERSUS

## XL INSURANCE AMERICA, INC.

## ON SUPERVISORY WRITS TO THE TWENTY-FIRST JUDICIAL DISTRICT COURT, PARISH OF LIVINGSTON

**JOHNSON, Chief Justice, additionally concurs and assigns reasons.**

I agree with the majority opinion, granting XL Insurance's exception of improper venue. "A forum selection clause is a provision in a contract that mandates a particular *state*, county, parish, or court as the proper venue in which the parties to an action must litigate any future disputes regarding their contractual relationship." *Shelter Mut. Ins. Co. v. Rimkus Consulting Grp., Inc. of Louisiana*, 13-1977 (La. 7/1/14), 148 So. 3d 871, 873–74 (citing *Fidelak v. Holmes European Motors, L.L.C.*, 13–0691 (La. 12/10/13), 130 So. 3d 851, 853) (emphasis added). The policy language in this case, mandating suit be brought exclusively in the State of New York, is clearly a forum selection clause.

I have long been in favor of upholding the enforceability of forum selection clauses, absent some specific legislative prohibition. This court has followed the lead of the United States Supreme Court in *Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). In *Bremen*, the Court acknowledged that forum selection clauses had not been historically favored by American courts and had generally not been enforced as against public policy. 407 U.S. at 9. However, the *Bremen* Court rejected that viewpoint and found such clauses should be deemed presumptively valid and ordinarily enforceable, unless enforcement would be

1

unreasonable, or the consent of the party challenging the clause was obtained through fraud or undue influence, or the chosen forum is unreasonable and seriously inconvenient. *Id*. at 13.

I authored this court's opinion in *Lejano v. Bandak*, 97-388 (La. 12/12/97), 705 So. 2d 158, *cert. denied*, *Lejano v. K.S. Bandak Assuranceforeningen Gard*, 525 U.S. 815, 119 S.Ct. 52, 142 L.Ed.2d 40 (1998), wherein, based on *Bremen*, this court upheld enforcement of a forum selection clause in a federal law maritime context, stating that such clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances." *Lejano*, 705 So. 2d at 166. I also authored this court's opinion in *Shelter Mutual*, wherein we held, for the first time, that forum selection clauses are generally enforceable and are not per se violative of public policy in Louisiana. *Shelter Mut. Ins. Co.*, 148 So. 3d at 878.

Consistent with my actions in *Lejano* and *Shelter Mutual*, I agree with the majority in this case that the sophisticated entities involved were engaged in a commercial transaction, and they exercised contractual freedom to resolve any dispute related to that contact in a particular forum. As I explained in *Shelter Mutual*, "the elimination of uncertainties relative to the location of litigation by agreement in advance on an acceptable forum to both parties is an indispensable element of trade, commerce and contracting." 148 So. 3d at 882. Thus, absent any legislative declaration of a wholesale public policy prohibiting enforcement of forum selection clauses, or prohibiting forum selection clauses in commercial insurance contracts, I find the forum selection clause in this insurance policy must be enforced.

2

**05/08/19**

# SUPREME COURT OF LOUISIANA

### No. 2018-CC-0748

### CREEKSTONE JUBAN I, L.L.C.

### VERSUS

### XL INSURANCE AMERICA, INC.

*On Supervisory Writs to the Twenty-First Judicial District Court,*
*Parish of Livingston*

**WEIMER, J.**, concurring.

I concur in the majority opinion in this case and write separately to provide additional analysis and to address Justice Hughes' thoughtful and enlightening examination of the legislative history of La. R.S. 22:868. **Creekstone Juban I, L.L.C. v. XL Insurance America, Inc.**, 18-0748, slip op. at 2 n.3 (La. __/__/2019) (Hughes, J., dissenting).

A civilian approach to analyzing the statute at issue in this case directs that the court attempt to ascertain its meaning first by looking to the language of the statute. La. C.C. art. 9; see also **Touchard v. Williams**, 617 So.2d 885, 888 (La. 1993). If that language is not clear and unambiguous, then it is appropriate to resort to legislative history. La. C.C. art. 10, see also **Touchard**, 617 So.2d at 888. In this case, I agree that an examination of the legislative history of La. R.S. 22:868 (A)(2) is appropriate, because I find that a key phrase therein, "jurisdiction of action," is ambiguous. However, I respectfully disagree with my colleague's assessment of the conclusions to be drawn from the legislative history.

The dissent focuses its attention and analysis on a single word in La. R.S. 22:868(A)(2): the word "jurisdiction." However, that word cannot be read in

isolation; it must be read in context. See La. C.C. art. 12 ("When the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole."). From my perspective, the critical language in the statute is the phrase "jurisdiction of action."

Louisiana R.S. 22:868(A)(2) prohibits "any condition, stipulation, or agreement" in any "insurance contract delivered or issued for delivery in this state" that would "[d]epriv[e] the courts of this state of the jurisdiction of action against the insurer." (Emphasis supplied.) This phrase is crucial and provides the proper context for ascertaining the legislative intent, because, as the dissent explains, under the Louisiana Code of Practice of 1870, jurisdiction had three components: (1) the object or amount in dispute (jurisdiction *ratione materiae*); (2) the person of the defendant (jurisdiction *ratione personae*); and (3) the place where the action is brought (jurisdiction *ratione personae*). See **Creekstone Juban I, L.L.C.**, 18-0748, slip op. at 2 n.3 (Hughes, J., dissenting). "[P]rior to the enactment of the 1960 Code of Civil Procedure, the term 'jurisdiction' was used to refer to either the subject matter jurisdiction of the court (jurisdiction ratione materiae) or the place where the action could be brought (jurisdiction ratione personae)." *Id.* While the dissent reasons that the use of the word "jurisdiction" in the predecessor statute to La. R.S. 22:868 (A)(2), Section 14.19 of the 1948 Insurance Code, must logically carry this dual meaning (encompassing both jurisdiction *ratione materiae* and jurisdiction *ratione personae*),[1] it overlooks the fact that the legislature, in enacting the statute, did not use the term

---

[1] See *id.*, slip op. at 3 n.3

2

"jurisdiction" standing alone. Rather, the legislature used the phrase "jurisdiction of action," indicating an intent to address a specific type of jurisdiction.[2]

This is significant when the historical context of 1948 La. Acts 195, the predecessor to La. R.S. 22:868, is examined. As explained in **Courville v. Allied Professional Ins. Co.**, 13-0976 (La.App. 1 Cir. 6/5/15), 174 So.3d 659, the Federal Arbitration Act ("FAA") was enacted in 1924. See *id.*, 13-0976 at 6, 174 So.3d at 664. Under the FAA, which makes no exception for insurance contracts, arbitration clauses in contracts are enforceable and should preempt or supercede any state law to the contrary. See *id.*, 13-0976 at 6-7, 174 So.3d at 665. In 1945, however, in response to **United States v. South-Eastern Underwriters Association**, 322 U.S. 533 (1944) ("which held that the business of insurance is subject to federal regulation under the Commerce [Clause]"), "Congress enacted the McCarron-Ferguson Act" ("MFA"). "The MFA had the effect of restoring the regulatory domain the States traditionally had exercised over the insurance industry prior to **South-Eastern Underwriters** ... by providing that any state law enacted for the purpose of regulating insurance will trump, or 'reverse preempt,' any contrary federal law that does not relate specifically to insurance." *Id.*, 13-0976 at 7, 174 So.3d at 665. In 1948, shortly after passage of the MFA, the Louisiana Legislature took up Congress's invitation to reverse-preempt the FAA, passing the predecessor to La. R.S. 22:868 as part of the Insurance Code. See 1948 La. Acts 195 § 14.19.

While an analysis of the language and purpose of the provision is dispositive, cases decided after the enactment of Section 14.19 of the 1948 Insurance Code have

---

[2] Such an interpretation is consistent with the well-settled presumption that every word, sentence, or provision in a law was intended to serve some useful purpose, that some effect is to be given to each such provision, and that no unnecessary words or provisions were employed. **Sultana Corporation v. Jewelers Mutual Insurance Company**, 03-0360, p. 9 (La. 12/3/03), 860 So.2d 1112, 1119.

confirmed its purpose as an anti-arbitration statute. **Macaluso v. Watson**, 171 So.2d 755 (La.App. 4 Cir. 1965), was the first case to invalidate an arbitration clause in an insurance contract pursuant to the statute. *Id.* at 757. In **Macaluso**, the court concluded that an arbitration agreement between an insured and his insurer was "void and unenforceable" because "its effect [was] to deprive the courts ... of the jurisdiction of the [insured] plaintiff's action against the insurer," in violation of La. R.S. 22:629(A)(2), now La. R.S. 22:868(A)(2). *Id.* In reaching its conclusion, the court explained:

> That the arbitration agreement ... has the effect of "[d]epriving the courts of this state of the jurisdiction of action against the insurer" admits of no argument. It unequivocally provides that the issue of liability as well as quantum be submitted to arbitration in accordance with the rules of the American Arbitration Association and that the parties "each agree to consider itself [themselves] bound and to be bound by any award made by the arbitrators." It provides further that "judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction thereof." *Thus the function of the court is limited to that of a sheriff or enforcement officer to execute the award, whether or not it is in agreement with it.*

**Macaluso**, 171 So.2d at 757-758 (emphasis supplied).

**Macaluso** confirms that the phrase "depriving the courts ... of the jurisdiction of action" is directed at agreements that have the effect of excluding judicial remedies.[3] The forum selection clause at issue in this case does not have that effect.

Since the decision in **Macaluso**, intermediate appellate courts in this state have consistently confirmed **Macaluso**'s interpretation of La. R.S. 22:868(A)(2) as an anti-arbitration provision, directed at nullifying any agreement that would have the effect

---

[3] **Lawrence v. Continental Ins. Co.**, 199 So.2d 398 (La.App. 3 Cir. 1967), a case relied on by the dissent, is not to the contrary. In **Lawrence**, the court of appeal held that a provision in an automobile insurance policy requiring the insured making a claim under the uninsured motorist coverage to join the nonresident uninsured motorist as a party defendant was unenforceable because the Louisiana court did not have personal jurisdiction over the nonresident motorist, thereby preventing Louisiana courts from enforcing a claim under the Louisiana-issued policy. *Id.* at 398.

of depriving the courts of jurisdiction of actions against an insurer by excluding judicial remedies. <u>See</u> **Courville v. Allied Professionals Ins. Co.**, 16-1354, p. 5 (La.App. 1 Cir. 4/12/17), 218 So.3d 144, 148, <u>writ denied</u>, 17-0783 (La. 10/27/17), 228 So.3d 1223 ("In Louisiana, compulsory arbitration provisions in insurance contracts are prohibited as a matter of public policy because they operate to deprive Louisiana courts of jurisdiction over actions against the insurer; further, such provisions deny Louisiana citizens of free access to its courts, a right guaranteed by the state's constitution."); **Hobbs v. IGF Ins. Co.**, 02-26, p. 3 (La.App. 3 Cir. 10/23/02), 834 So.2d 1069, 1071 ("Louisiana courts have consistently held that compulsory arbitration clauses in contracts of insurance are unenforceable under this statute because they operate to deprive Louisiana courts of jurisdiction of the action against the insurer."). This court reached the same conclusion in **Doucet v. Dental Health Plans Mgmt. Corp.**, 412 So.2d 1383, 1384 (La. 1982) (citing **Macaluso**, 171 So.2d 755) ("Classification of the contract at issue as an insurance contract renders the arbitration provisions of that contract unenforceable."). *Cf.* La. C.C. art. 9; La. R.S. 1:4.

Thus, I agree with the conclusion that analysis begins with the language of La. R.S. 22:868. However, I find the language is not clear and unambiguous. Consequently, a resort to legislative history is appropriate in ascertaining the legislative intent. I am convinced that La. R.S. 22:868(A)(2)'s prohibition is directed at agreements, like compulsory arbitration provisions, that would deprive Louisiana courts of the legal power and authority to hear a dispute. A forum selection clause, such as the one at issue in this case, does not deprive the courts of "jurisdiction of action against the insurer" within the meaning of La. R.S. 22:868(A)(2).

Additionally, although the clause at issue in the insurance contract does not specifically use the word "venue," that fact does not negate the clear meaning and import of the clause. The contract states that "any suit shall be brought and heard in a court of competent jurisdiction *within the State of New York*." (Emphasis added.) There is no requirement that the word "venue" appear in a clause for that clause to identify the place where the case is to be tried. "Venue means the [place or location] where an action or proceeding may properly be brought and tried." See La. C.C.P. art. 41. According to the insurance contract at issue, that place is "within the State of New York," in accordance with New York's venue rules.

05/08/19

SUPREME COURT OF LOUISIANA

No. 2018-CC-0748

CREEKSTONE JUBAN I, L.L.C.

VERSUS

XL INSURANCE AMERICA, INC.

ON SUPERVISORY WRITS TO THE TWENTY-FIRST JUDICIAL
DISTRICT COURT, PARISH OF LIVINGSTON

**HUGHES, J.**, dissenting.

It is ridiculous that a Louisiana business with Louisiana customers and employees that suffers millions of dollars in damages requiring millions of dollars of repairs by Louisiana carpenters, plumbers, and painters in Louisiana insured by an insurance policy delivered in Louisiana should be required to litigate against the insurer in New York when it has been the public policy of Louisiana since 1948 that such matters should be litigated in Louisiana and that "any condition" to the contrary contained in an insurance policy is prohibited. The disdain for Louisiana business and the Louisiana Legislature is remarkable.

In reversing the trial court and the court of appeal, the majority opinion is wrong for three separate reasons: failure to recognize public policy, false dichotomy between "big sophisticated" business and "single" Louisiana residents, and an unsupportable reformation of the contract to enable the desired result.

**Public Policy**

This case involves an *insurance contract*. Louisiana Revised Statute 22:868 (A)(2) and its predecessors since 1948 have provided that no insurance contract delivered in this state shall contain any condition depriving the courts of this state of jurisdiction of action against the insurer. The law contains no exception for forum selection clauses. The United States Supreme Court in **Bremen v Zapata** and the Louisiana Supreme Court in **Shelter Mutual v Rimkus** note the relatively recent ascendency of forum selection clauses, but *neither involved an insurance contract*, and *both recognized a public policy exception* to enforcement of a forum selection clause.

In **Lawrence v Continental Insurance Company**, 199 So.2d 398 (3rd Cir. 1967), a case that *did* involve an insurance contract, perhaps the most respected judge in Louisiana history, Al Tate, explained that the provision at issue expresses a public policy:

> The statute incorporates a public policy determination that no contract issued in Louisiana covering a Louisiana subject shall deny the Louisiana insured the benefit of a ***practical remedy*** in Louisiana courts, thus prohibiting a requirement that he litigate his claim in an inconvenient foreign forum or submit to its adjudication by some private tribunal. The statute's command must be enforced, by reason of which the policy condition is void as violating the statutory prohibition.

(Emphasis added.)

The majority's failure to recognize this public policy is illustrated in footnotes 4, 5, and 6 in the opinion. Noting public policy exceptions to forum selection clauses for construction contracts and employment contracts, the opinion "notably" comments that the Legislature did not "amend" 22:868 after this court's decision in **Shelter Mutual**, apparently with little recognition that **Shelter Mutual** did not involve an insurance contract and that the language of 22:868 has been on the books <u>for 66 years</u> prior to the decision in **Shelter Mutual**. It was, in fact, the granddaddy of contractual public policy pronouncements, at a time when similar provisions to keep insurance litigation in the state where the risk was insured were enacted all across the United States. It is only common sense that the court where the damage occurred and the repairs are to be made is best suited to hear the claim. There was no need to "amend" what was already in place.

## "Sophisticated" Businesses versus "Single" Residents

The majority opinion makes much of the fact that these were "sophisticated" companies registered in Delaware (obviously for tax purposes) exercising their freedom to contract. But the opinion also recognizes that the sole business of plaintiff is as the owner of a high-end mall in Louisiana. The opinion acknowledges a factual finding that the policy was delivered or issued for delivery in Louisiana.

It is important to recognize that the statute focuses on the type of contract, in this case insurance. As noted, other statutes have stated a public policy to litigate Louisiana construction contracts and employment contracts in Louisiana. These statutes all focus on *the type of contract*, not the *character of the parties*. The majority implies that big, sophisticated parties are not protected by the insurance

statute, while "single" Louisiana residents are given a pass. What about married couples? Churches? Schools? Small businesses? Medium-sized businesses? Is this a slippery slope or an abyss? The statute is meant to apply to <u>all</u> Louisiana insurance contracts, regardless of the size or character of the parties.

## Reformation of the Contract

The underlying analysis for the majority opinion relies on the idea that "jurisdiction" and "venue" are separate and distinct concepts. The opinion contains this remarkable sentence on page 6:

> Rather, the clause at issue sets forth a contractual agreement that New York is the proper ***venue*** for any action under the Policy, and leaves the court's subject matter jurisdiction unaffected.

(Emphasis in original)

The "clause at issue" is set forth on page 2 of the opinion:

> In the event that any disagreement arises between the "insured" and the "Company" requiring judicial resolution the "insured" and the "Company" each agree that any suit shall be brought and heard in a court of competent jurisdiction within the State of New York. The "Insured" and the "Company" further agree to comply voluntarily with all requirements necessary to give such court jurisdiction…

I have searched in vain for **venue** in this clause. As best I can understand, it works like this: Even though the contract does not contain the word venue, but rather says "jurisdiction", this court has determined that *what the parties really meant* was venue, and because jurisdiction and venue are different concepts, and the statute does not refer to venue, it does not apply to this contract. Really.

## Conclusion

It is difficult to figure what purpose the Legislature had in mind with this statute other than preventing what is happening here. Louisiana Civil Code Article 2049 provides that "a provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective." I am concerned that large sophisticated Louisiana businesses may find themselves litigating insurance claims in New York or some other foreign jurisdiction. And the "it's not really jurisdiction, they mean venue, but the statute only says jurisdiction" argument is droll.

For these reasons, I respectfully dissent.

3

SUPREME COURT OF LOUISIANA

No. 2018-CC-0748

CREEKSTONE JUBAN I, L.L.C.

VERSUS

XL INSURANCE AMERICA, INC.

ON SUPERVISORY WRITS TO THE TWENTY-FIRST JUDICIAL
DISTRICT COURT, PARISH OF LIVINGSTON

**GENOVESE, J.**, dissents for the reasons assigned by Justice Hughes.